838 So.2d 543 (2003)
COASTAL FLORIDA POLICE BENEVOLENT ASSOCIATION, INC., Petitioner,
v.
Phillip B. (Phil) WILLIAMS, etc., Respondent.
Phillip B. (Phil) Williams, etc., Petitioner,
v.
Coastal Florida Police Benevolent Association, Inc., Respondent.
Nos. SC00-1860, SC00-2072.
Supreme Court of Florida.
January 30, 2003.
*544 G. "Hal" Johnson, Tallahassee, for Petitioner/Respondent.
Phillip P. Quaschnick of Powers, Quaschnick, Tischler, Evans & Dietzen, Tallahassee; and Stephen H. Grimes of Holland & Knight LLP, Tallahassee, for Respondent/Petitioner.
James G. Brown and Dorothy F. Green of Brown & Green, P.A., Orlando, for Palm *545 Beach County Sheriff's Office, Amicus Curiae.
William E. Powers, Jr., of Powers, Quaschnick, Tischler, Evans & Dietzen, Tallahassee, for the Florida Sheriffs' Association, Amicus Curiae.
Ellen Leonard, Tampa, for Cal Henderson, Sheriff of Hillsborough County, Amicus Curiae.
PER CURIAM.
We have for review Williams v. Coastal Florida Police Benevolent Ass'n, 765 So.2d 908 (Fla. 5th DCA 2000), wherein the district court certified the following question to be of great public importance:
ARE DEPUTY SHERIFFS CATEGORICALLY EXCLUDED FROM HAVING COLLECTIVE BARGAINING RIGHTS UNDER CHAPTER 447?
Id. at 909. We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution. For the reasons stated below, we rephrase the question, and, as rephrased, we answer the certified question in the negative. We rephrase the question:
ARE DEPUTY SHERIFFS CATEGORICALLY EXCLUDED FROM HAVING COLLECTIVE BARGAINING RIGHTS UNDER THE FLORIDA CONSTITUTION?
We answer this question in the negative and hold that deputy sheriffs, like all other employees, are entitled to collective bargaining rights under the express provisions of the Florida Constitution.

PROCEEDINGS TO DATE
This case arose out of a petition filed before the Public Employees Relations Commission (PERC) by the Coastal Florida Police Benevolent Association, Inc. (CFPBA), seeking to represent certain public employees in the State of Florida for purposes of collective bargaining. PERC is the agency which oversees and regulates public sector collective bargaining in Florida. CFPBA filed a representation-certification petition seeking certification as the exclusive collective bargaining agent for employees of the Brevard County Sheriff's Office. The employees included deputy sheriffs in the positions of deputy, field training officer, corporal, and sergeant. After a preliminary investigation, PERC issued its "Notice of Sufficiency" finding that the CFPBA's petition was sufficient to allow it to enforce the collective bargaining rights of the deputy sheriffs:
The Florida Supreme Court's recent opinion in Service Employees International Union Local 16, AFL-CIO v. Public Employees Relations Commission, et al., No. SC 94427 [752 So.2d 569] (Fla. January 13, 2000), casts doubts as to the vitality of its prior decision in Murphy v. Mack, 358 So.2d 822 (Fla. 1978), holding that deputy sheriffs are not public employees. Therefore, we find this petition to represent deputy sheriffs for the purpose of collective bargaining sufficient in order to develop a record as to the deputies' duties and responsibilities vis-a-vis the sheriff himself.[1]
Subsequent to PERC's Notice of Sufficiency, Sheriff Williams filed an application for *546 a writ of prohibition with the Fifth District Court of Appeal, asserting that deputy sheriffs have no collective bargaining rights. After initially granting relief in part, the Fifth District reconsidered and denied prohibition. The Fifth District opined that this Court's decision in Service Employees International Union, Local 16, AFL-CIO v. Public Employees Relations Commission, 752 So.2d 569 (Fla.2000), substantially undercut the rationale of Murphy v. Mack, 358 So.2d 822 (Fla.1978):
In Service Employees, the Florida Supreme Court took another look at the Murphy case. It said that the name "deputy" and the fact of "appointment" were meaningless distinctions in determining whether a person is entitled to collective bargaining rights under chapter 447. Rather, the statute sets forth two basic categories of persons who work for the publicthe ordinary ones and the managerial ones. Only the managerial ones are not public employees for purposes of rights to collective bargaining.
Williams, 765 So.2d at 909. Based on this analysis, the Fifth District denied the petition for prohibition and certified the aforementioned question, which we have rephrased for purposes of this opinion.

ANALYSIS
In Murphy v. Mack, 358 So.2d 822 (Fla. 1978), the Court considered whether the county sheriff was a "public employer" and deputy sheriffs "public employees" under the Florida statutory scheme of collective bargaining. The Court held that the county sheriff was a public employer; however, it held that deputy sheriffs were not public employees. Id. at 824 ("[W]e find that the language employed by the Legislature in Chapter 447, Florida Statutes (1975), does not reveal a legislative intent to include appointed deputy sheriffs within the definition [of] `public employee.'").
In Service Employees this Court was presented with a similar question certified by the Fifth District involving public employees who have historically been categorized as "deputies":
Are deputy court clerks, unlike deputy sheriffs, public employees within the contemplation of section 447.203(3), Florida Statutes?
752 So.2d at 570. The Court answered affirmatively and held that deputy clerks were in fact public employees entitled to collective bargaining rights under section 447.203, Florida Statutes (1997). The Court acknowledged that in the past a "deputy" may have occupied a special place inasmuch as a "deputy functioned as the alter ego, so to speak, or second in command to the principal." Id. at 572. In this respect, the Court noted, deputies were in fact managerial-level employees who could take charge in the principal's absence. However, the Court found:
Times have changed and the public officials who once required one or two deputies to assist them in their tasks now might require a host of assistants. Further, the range of tasks performed by these workers has expanded and the tasks themselves have become specialized. For instance, a clerk of court today might employ a score or more skilled workers as bookkeepers, archivists, filing clerks, typists, and receptionists. In deference to tradition, such employees are often still called "deputies," but their positions bear little resemblance to the deputies of old. As noted by the district court below, the deputies of today often "look surprisingly like other public employees." Various public officials are currently authorized under Florida Statutes to appoint deputiese.g., sheriffs, clerks of court, property appraisers, and tax collectors.
*547 Id. (citation omitted) (footnotes omitted). In Service Employees, the Court further observed that "Murphy appears to have exalted form over substance in contravention of the plain language and broad purpose of the Act." The Court also noted that the "appointed/employed" distinction was of little significance under chapter 447, Florida Statutes (1997), because the definition of "public employee" in section 447.203 itself drew no such distinction. The Court explained that there was simply no basis for excluding a "deputy" from the protection of chapter 447:
There are two basic categories of persons who work for the public: (1) employees in the ordinary sense of the word, and (2) managerial level employees (as well as various other specialized workers). Employees in the ordinary sense of the word are considered "public employees" under the Act and their right to collectively bargain is protected. Managerial level employees, on the other hand, are not considered "public employees" and their right to collectively bargain is not protected by the Act.
752 So.2d at 572. We ultimately concluded that it would not be appropriate to extend our prior ruling in Murphy to deputy clerks.
On the other hand, consistent with our holding in Murphy, we note that other statutory provisions reflect an apparent legislative intent to deny or control the right to extend collective bargaining to deputy sheriffs.[2] First, section 30.071(1) states that chapter 30, Florida Statutes (2002), applies to all deputy sheriffs, except those who, by special act of the Legislature or local law, are granted rights greater than those provided in the chapter, including collective bargaining rights. By necessary implication, this evinces an intent that the Legislature has not otherwise granted the right to collective bargaining to all deputy sheriffs, but local entities may do so if they please. To the extent that is not sufficiently clear, section 30.071(2) unambiguously states, "This act does not grant to deputy sheriffs the right of collective bargaining." In addition, section 112.535, Florida Statutes (2002), provides:
The provisions of chapter 93-19, Laws of Florida, shall not be construed to restrict or otherwise limit the discretion of the sheriff to take any disciplinary action, without limitation, against a deputy sheriff, including the demotion, reprimand, suspension, or dismissal thereof, nor to limit the right of the sheriff to appoint deputy sheriffs or to withdraw their appointment as provided in chapter 30. Neither shall the provisions of chapter 93-19, Laws of Florida, be construed to grant collective bargaining rights to deputy sheriffs or to provide them with a property interest or continued expectancy in their appointment as a deputy sheriff.

Id. (emphasis added.) It is important to note that the Murphy opinion considered whether "a sheriff is a `public employer' and whether a deputy sheriff is a `public employee' as such terms are utilized in Chapter 447, Florida Statutes (1975)." 358 So.2d at 823. The Murphy opinion did not consider any constitutional considerations associated with the determination of the status of deputy sheriffs.

*548 Constitutional Construction

CFPBA asserts that the statutory provisions governing the collective bargaining rights of law enforcement employees are conflicting and inconsistent. For example, CFPBA asserts that all police officers in Florida doing the same work as deputy sheriffs have collective bargaining rights. CFPBA also asserts that the Florida statutory scheme is arbitrary and inconsistent in providing for bargaining rights to deputy sheriffs in some counties in Florida while denying such rights in other counties. The sheriff does not attempt to refute these claims except to assert that as to deputy sheriffs they reflect matters of legislative discretion.
The right of employees in Florida to collective bargaining is expressly provided for in the Florida Constitution. Accordingly, even assuming a legislative intent to deny collective bargaining rights to deputy sheriffs, the question remains as to the constitutionality of any such exclusion, an issue not addressed in Murphy. Article I, section 6, of the Florida Constitution provides:
Right to Work.The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization. The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike.
Id. (emphasis supplied). This Court has deemed the right to collective bargaining to be of a fundamental character and has applied a strict scrutiny test to any action which tends to undermine this right. See, e.g., State v. Police Benevolent Ass'n, 613 So.2d 415, 423 (Fla.1992) ("[T]he compelling state interest test applies to collective bargaining agreements...."). Further, this Court has recognized that, with the 1968 revision of the constitution, both private and public employees have the same broad rights to collective bargaining. See Dade County Teachers' Ass'n v. Ryan, 225 So.2d 903, 905 (Fla.1969) ("We hold that with the exception of the right to strike, public employees have the same rights of collective bargaining as are granted private employees by Section 6."); see also Chiles v. State Employees Attorneys Guild, 734 So.2d 1030, 1033 (Fla.1999) ("The Legislature cannot, however, abridge public employees' right to bargain collectively, absent a compelling state interest....").

PLAIN MEANING
The rules which govern the construction of statutes are generally applicable to the construction of constitutional provisions. See State ex rel. McKay v. Keller, 140 Fla. 346, 191 So. 542, 545 (1939). Accordingly, the basic rule requiring that the intent of the framers and adopters be given effect equally controls in construing constitutional provisions. See State ex rel. Dade County v. Dickinson, 230 So.2d 130, 135 (Fla.1969). Furthermore, we have consistently held that in order to determine intent we must give effect to the plain meaning of the words actually used in the Constitution:
Any inquiry into the proper interpretation of a constitutional provision must begin with an examination of that provision's explicit language. If that language is clear, unambiguous, and addresses the matter in issue, then it must be enforced as written....
... We recognize the rule that constitutional language must be allowed to "speak for itself." Application of that rule, however, must be tempered by judicial deference to offsetting and equally constraining rules. We refer to two fundamental principles of constitutional adjudication. *549 First, constitutions "receive a broader and more liberal construction than statutes." Second, constitutional provisions should not be construed so as to defeat their underlying objectives.
Constitutions are "living documents," not easily amended, which demand greater flexibility in interpretation than that required by legislatively enacted statutes. Consequently, courts are far less circumscribed in construing language in the area of constitutional interpretation than in the realm of statutory construction. When adjudicating constitutional issues, the principles, rather than the direct operation or literal meaning of the words used, measure the purpose and scope of a provision.
Fla. Soc'y of Ophthalmology v. Fla. Optometric Ass'n, 489 So.2d 1118, 1119 (Fla. 1986) (citations omitted). Hence, we have an obligation to provide "a broader and more liberal construction" of constitutional provisions, as well as being certain not to construe the provisions "so as to defeat their underlying objectives."
The right to collective bargaining was first provided in article I, section 12 of the 1885 Florida Constitution:
The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization, provided, that this clause shall not be construed to deny or abridge the right of employees by and through a labor organization to bargain collectively with their employer.
Id. The collective bargaining right was revisited in the 1968 constitution, and the revised provision provides:
The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or organization. The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike.
Art. I, § 6, Fla. Const. It is apparent to this Court that the plain meaning and use of the term "employees" was intended to be applied in its broadest sense, to include all employees, public and private, as recipients of the right to bargain collectively. That is, all employees who work for the government or for private business are equally entitled to collectively bargain with their employers. That is clearly the plain meaning of the word "employees" as used in the constitution.
Ultimately, the sheriff is urging this Court to find that in order for deputy sheriffs to have been included as "employees" in the constitution, there would have to have been a specific constitutional provision singling out deputy sheriffs as employees entitled to bargaining rights (i.e., "the right of employees, including deputy sheriffs"). Considering the simple and broad language used by the constitution and its plain meaning, we reject that suggested requirement as an unlikely and overly strained construction. Such a construction does not comport with our obligation to give the collective bargaining provisions a broad and liberal construction consistent with the underlying objectives of the provision.
Indeed, such a construction would require all kinds of employees, such as lawyers, deputy clerks, and others, to have been specifically listed, rather than being presumed to have been included in the comprehensive term "employees." We conclude there is simply nothing ambiguous about the constitutional provision for the right of collective bargaining being extended to all employees, public and private. It would be hard to think of a *550 broader, more inclusive phrase that could have been used than "employees." The only limitation in the provision is on the right to strike by public employees.

LEGISLATIVE HISTORY
The plain and unambiguous meaning of the words used in the constitution means that we need not look at legislative history. However, as is often the case with statutory and constitutional provisions of that time, there is not much historical material on whether the revision commission deliberated on the inclusion or exclusion of specific categories of employees, such as deputy sheriffs, in the definition of employees. However, some limited history of the movement of the right to work provision through the Legislature after submission by the Florida Constitution Revision Commission ("Commission"), sheds some light on this determination. On November 10, 1966, the Commission proposed the following constitutional language:
Section 12. Right to work.The right of persons to work shall not be denied or abridged on account of membership nor non-membership in any labor union or association. The right of employees, public or private, by and through a labor union or association to bargain collectively shall not be denied nor abridged. Public employees shall not have the right to strike.
Florida Constitution Revision Commission, A Draft of a Proposed Revised Constitution of Florida 3 (Nov. 10, 1966) (on file in the Florida Supreme Court Library) (emphasis added). Subsequent to submission by the Commission, the section was taken up by separate interim constitution revision committees of the house and the senate. The senate committee kept the Commission's proposed revision substantially unchanged. However, the house committee made a substantial change in that its proposal limited the right to collective bargaining solely to private employees. The house committee version made the following alteration:
Section 6. Right to Work.The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization. The right of employees, public or private, by and through a labor union or labor organization private employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike.
Fla. H.R. Jour. 6 (Spec. Sess. June 25, 1968). Thus, there were two separate versions of the section, the house version, limiting collective bargaining to private employees, and the senate version, granting collective bargaining rights to both private and public employees. Ultimately, the Conference Committee of the House and Senate voted to reject the house version and to accept and recommend the senate version granting the right to collectively bargain to all employees, the final result of which was the current version of the Right to Work provision of the constitution.
As shown by the chronology and history of the Right to Work provision, there was apparently ample deliberation as to whether public employees, as an entire class, were to be extended the right to collectively bargain. At the end of the day, it was decided that all public employees would be entitled to that right. Notably, no exception was made in the constitution to exclude special categories of employees such as deputies or lawyers.

COMPELLING STATE INTEREST
There is also no assertion here that the State has a compelling interest in depriving *551 deputy sheriffs of the right to collective bargaining. Indeed, as noted above, all police officers and many deputy sheriffs have been exercising such rights throughout Florida for some time. The most recent case in which this Court has reviewed a statutory restriction on a public employee's right to collective bargaining was in Chiles v. State Employees Attorneys Guild, 734 So.2d 1030, 1033 (Fla.1999), wherein we struck down a statutory attempt to deny collective bargaining rights to lawyers employed by government.
In Chiles, we addressed the constitutionality of section 447.203(3)(j), Florida Statutes (1997), which prohibited "`[t]hose persons who by virtue of their positions of employment are regulated by the Florida Supreme Court' from engaging in collective bargaining with their government employer." 734 So.2d at 1031. This section was enacted as an exception to the definition of "public employee" in section 447.203(3). In support of maintaining this statutory exception, the State asserted the following as a compelling state interest:
This action by the Legislature should respond to the arguments recently presented to the Florida Supreme Court in which the parties questioned whether the exclusion of an exemption from collective bargaining for government lawyers was evidence of the Legislature's intent to either waive or consent to "any conflicts with or alterations of the traditional attorney-client relationship" between governmental bodies and their lawyers. The Legislature is constitutionally empowered to provide the standards and guidelines for implementing the collective bargaining rights of public employees as provided in article I, section 6, Florida Constitution. Therefore, the Legislature has the authority to determine that the State has a compelling interest in excluding certain persons, including government lawyers, from the collective bargaining process in the same manner in which it has excluded other persons who have managerial, confidential or otherwise unique employment relationships with the State.
By excluding government lawyers from collective bargaining, the Legislature has determined that a necessity exists whereby government attorneys give complete confidentiality, fidelity and loyalty to a governmental body while conducting its legal affairs. This necessity aligns the attorney with the governmental body and acknowledges the mutual trust, exchanges of confidence, reliance on judgment and personal nature of the attorney-client relationship that would not exist if the attorney were able to continuously sue his or her client/employer to enforce the terms of a collective bargaining agreement.
Id. at 1032 (quoting Fla. H.R. Comm. on Empl. & Mgmt. Rel., HB 2281 (1994) Staff Analysis 3 (final April 11, 1994) (on file with comm.)). This Court rejected this argument and found the statute unconstitutional.
In our opinion, we reaffirmed the principle that the right to bargain collectively was a fundamental right and "[a] statute abridging the right of state employees to bargain collectively is consonant with the constitution only if it vindicates a compelling state interest by minimally necessary means." Id. at 1033. Then, adopting the trial court's analysis, the Court reasoned that while the State may have a compelling interest in preserving the lawyer-client relationship, there was no evidence that interest was endangered by collective bargaining:
The compelling state interest in retaining competent, professional attorneys does not support a finding of a compelling state interest in preventing any *552 collective bargaining by state employed attorneys. The State presented no evidence to support the position that government employed attorneys would abandon their ethical obligation of confidentiality, fidelity and loyalty by becoming members of a labor union.
Id. at 1034. Based on our analysis in Chiles, and, to the extent that any provisions of the Florida Statutes purport to prohibit deputy sheriffs from engaging in collective bargaining, we conclude they are contrary to the plain provisions of Florida's Constitution and that no compelling government interest has been demonstrated. Indeed, the sheriff concedes that the overwhelming majority of law enforcement employees in Florida enjoy collective bargaining rights.
Clearly, maintaining a traditional relationship such as that existing between a sheriff and a deputy sheriff does not meet the high standard of strict scrutiny and compelling state interest necessary to justify infringement of the right to bargain collectively. In fact, the reverence for this traditional relationship borders on the nostalgic, in light of the current circumstances surrounding that relationship as noted in Service Employees. As pointed out in Service Employees, a deputy sheriff appears to work for his or her sheriff in the same fashion that a municipal police officer works for his or her chief. See 752 So.2d at 573 n. 9. Yet, all police officers freely enjoy the right to collective bargaining. Certainly, if the State had to find less restrictive means to preserve the obviously important and unique attorney-client relationship between government lawyers and their employers, less restrictive means could be found to preserve the traditional relationship between sheriffs and their deputies without depriving the latter of the right to collective bargaining. Cf. Chiles, 734 So.2d at 1035 ("Even assuming some additional compartmentalization will be required, the administrative interest in avoiding compartmentalization must be viewed in light of the fundamental right to bargain collectively.").

CONCLUSION
We must be ever vigilant in remembering that these are fundamental constitutional rights that are in question, and we must be careful before depriving an entire category of employees of those rights in the face of a provision giving those rights to all employees. As explained above, the right to collectively bargain is a fundamental right explicitly vested in all Florida employees by the Florida Constitution, and, therefore, any governmental action attempting to restrict the enjoyment thereof is subject to strict scrutiny. To the extent that the sheriff has failed to demonstrate why a deputy sheriff does not come within the ambit of the definition of an employee, and to the extent that the State has equally failed to articulate a compelling interest, outside of merely maintaining some traditional status between a sheriff and her deputies, a deputy sheriff may not be deprived of the constitutional right to collectively bargain. We answer the rephrased certified question in the negative and conclude that deputy sheriffs, like all other employees, have the right to collectively bargain.
Because we conclude that the Florida Constitution explicitly grants all employees the right to collective bargaining, including deputy sheriffs, we recede from any implication to the contrary in our opinion in Murphy, and reaffirm our decisions in Service Employees and Attorneys Guild. The decision of the district court of appeal is approved.
It is so ordered.
*553 ANSTEAD, C.J., PARIENTE and QUINCE, JJ., and SHAW, Senior Justice, concur.
WELLS, J., dissents with an opinion, in which LEWIS, J., concurs.
HARDING, Senior Justice, dissents with an opinion, in which WELLS and LEWIS, JJ., concur.
WELLS, J., dissenting.
I join in Justice Harding's dissent. I also dissent because I do not find that the majority has set out a basis upon which to recede from Murphy v. Mack, 358 So.2d 822 (Fla.1978). I do not believe that this present Court should change this law when neither the Legislature nor the Constitutional Revision Commission has acted to change the law since the decision was issued.
LEWIS, J., concurs.
HARDING, Senior Justice, dissenting.
I respectfully dissent. By rephrasing the certified question from one pertaining to chapter 447 to one interpreting the Florida Constitution, the majority is completely changing the nature of this case. More importantly, the majority is exceeding the constitutional bounds of this Court's jurisdictional limits. In the past, this Court has rephrased questions "in the interest of clarity";[3] in order to "reflect the issue presented";[4] and to "more accurately reflect the procedural posture and underlying facts of th[e] case."[5] But this Court has never rephrased a certified question for the purpose of turning a run-of-the-mill statutory construction case into a full-blown constitutional interpretation case.
Both PERC and the district court below made their decisions pursuant to their interpretations of chapter 447; neither addressed the issue from a constitutional perspective. Moreover, this Court's decisions in Service Employees,[6] which the majority relies on to reach today's holding, and Murphy,[7] which the majority now recedes from, were primarily based on the Court's interpretation of chapter 447, not article I, section 6 of the Florida Constitution.
This is a court of limited jurisdiction. In Pirelli Armstrong Tire Corp. v. Jensen, 777 So.2d 973, 974 (Fla.2001), this Court dismissed review of a case because the district court had certified a question without ruling on the question certified. We explained that our jurisdiction in certified question cases was limited to "any decision of a district court of appeal that passes upon a question certified by it to be of great public importance." Id. (quoting art. V, § 3(b)(4), Fla. Const.) (emphasis added). By applying the reasoning of Jensen to the instant case, it follows that this Court can not both rephrase and answer a certified question if the rephrased question was not previously ruled upon by the district court below. For this reason, I would not rephrase the certified question in this case.
WELLS and LEWIS, JJ., concur.
NOTES
[1] Contemporaneous with this finding, PERC ordered a hearing to determine facts and issues in relation to representation and unit determination. PERC also ordered Sheriff Phillip B. Williams ("Sheriff Williams" or "the sheriff") to provide the relevant list of employees and the relevant job classifications for purposes of inclusion in or exclusion from the unit.
[2] Section 30.07, Florida Statutes (2002), states, "Sheriffs may appoint deputies to act under them who shall have the same power as the sheriff appointing them, and for the neglect and default of whom in the execution of their office the sheriff shall be responsible." Section 30.071, Florida Statutes (2002), further provides that "[t]his act does not change the alter ego relationship which exists between a deputy sheriff and the appointing sheriff."
[3] Dohnal v. Syndicated Offices Systems, 529 So.2d 267 (Fla.1988).
[4] State v. Smith, 641 So.2d 849 (Fla.1994).
[5] Frankenmuth Mut. Ins. Co. v. Magaha, 769 So.2d 1012 (Fla.2000).
[6] Serv. Employees Int'l Union Local 16, AFLCIO v. Pub. Employees Relations Comm'n, 752 So.2d 569 (Fla.2000).
[7] Murphy v. Mack, 358 So.2d 822 (Fla.1978).