940 So.2d 1090 (2006)
ADVISORY OPINION TO The GOVERNOR re JUDICIAL VACANCY DUE TO MANDATORY RETIREMENT.
No. SC06-1184.
Supreme Court of Florida.
September 15, 2006.
Raquel A. Rodriguez, General Counsel, Nathan A. Adams, IV, Deputy General Counsel, and Gladys Perez, Assistant General Counsel, Office of the Governor, Tallahassee, for Petitioner, The Honorable Jeb Bush.
Jason Brent Gonzalez, Chairman, Judicial Nominating Commission for the First District Court of Appeal, Tallahassee, responding with comments.
The Honorable Jeb Bush
Governor, State of Florida
The Capitol
Tallahassee, Florida 32399
Dear Governor Bush:
By letter dated June 20, 2006, you requested our opinion on a question of constitutional interpretation involving your executive powers and duties with regard to a mandatory judicial vacancy in the First District Court of Appeal. This request and our response is pursuant to article IV, section (1)(c) of the Florida Constitution.[1]
Your letter provided the relevant facts as follows:
Judge Richard Ervin, III, a judge of the First District Court of Appeal, was born on October 16, 1934. On that day in 2004, Judge Ervin turned seventy ears old. Article V, section 8 of the Florida Constitution provides that "[n]o judge or justice shall serve after attaining the age of seventy years except upon temporary assignment or to complete a term, one-half of which has been served." Judge Ervin's term ends on January 1, 2007. Because of mandatory retirement, he was ineligible for retention and did not seek to qualify for retention during the qualifying period, May 8-12, 2006.
Article V, section 10 provides that "[i]f a justice or judge is ineligible or fails to qualify for retention, a vacancy shall exist *1091 in that office upon the expiration of the term being served by the justice or judge." Article V, section 11(a) provides for the Governor to fill a vacancy in a judicial office to which election for retention applies.
Although I understand that a physical vacancy occurs upon the termination of the term, a question has arisen as to when a constitutional vacancy occurs, effectuating the process to fill it. If a constitutional vacancy occurs upon the failure of a judge to qualify for retention, the judicial nominations commission must submit nominations to me within 30 days from the occurrence of the vacancy, unless extended by me for another 30 days. Art. V, sec. 11(c), Fla. Const. In such instance, I will be able to appoint a successor who can take office immediately after the conclusion of Judge Ervin's term, and there will be no prolonged vacancy on the First District Court of Appeal. If a constitutional vacancy occurs only at the expiration of his term, the nominations may not be made until thirty to sixty days thereafter, and it may be as late as May 2007 before a successor is appointed, leaving a four month vacancy on the court.
Therefore, I respectfully request an opinion of the Justices of the Supreme Court as to the question of when a vacancy occurs resulting from the mandatory retirement of the judge who is not eligible for retention.
Letter from Governor Jeb Bush to former Chief Justice Barbara Pariente (June 20, 2006) (on file with Clerk, Supreme Court of Fla.), at 1-2. Judge Ervin two days later wrote a letter to you announcing that he would complete his term on the First District Court of Appeal, but was constitutionally prohibited from serving an additional term.

ANALYSIS
Article V, section 8, of the Florida Constitution provides, in pertinent part, "No justice or judge shall serve after attaining the age of seventy years except upon temporary assignment or to complete a term, one-half of which has been served." Art. V, § 8, Fla. Const. Article V, section 11 of the Florida Constitution, titled Vacancies, delineates the Governor's duties when a vacancy occurs in a judicial office:
(a) Whenever a vacancy occurs in a judicial office to which election for retention applies, the governor shall fill the vacancy by appointing for a term ending on the first Tuesday after the first Monday in January of the year following the next general election occurring at least one year after the date of appointment, one of not fewer than three persons nor more than six persons nominated by the appropriate judicial nominating commission.
. . . .
(c) The nominations shall be made within thirty days from the occurrence of a vacancy unless the period is extended by the governor for a time not to exceed thirty days. The governor shall make the appointment within sixty days after the nominations have been certified to the governor.
Art. V, § 11(a),(c), Fla. Const.
Our response to your question is compelled by the fact that there is a specific constitutional provision that expressly provides that a vacancy in a merit retention judicial office does not occur until the end of the judge or justice's term. Article V, section 10(a), of the Florida Constitution states: "If a justice or judge is ineligible or fails to qualify for retention, a vacancy shall exist in that office upon the expiration of the term being served by the justice or judge." (Emphasis added.) The letter of a merit retention judge or justice announcing *1092 his or her mandatory retirement at the end of the term does not create a vacancy in that judicial office until the actual date that the judge or justice's term expires pursuant to the specific constitutional provision which addresses when a "vacancy" occurs.
To understand the distinction between elected and retained judges, it is instructive to review the constitutional history regarding judicial vacancies. Prior to a 1976 amendment implementing the merit retention of Florida Supreme Court justices and district court of appeal judges, the Florida Constitution did not contain a specific explanation of when judicial positions become "vacant." This Court in Spector v. Glisson, 305 So.2d 777 (Fla. 1974), a case involving a non-merit retention judicial resignation prior to the amendment, noted:
A thorough search of the Florida Constitution reveals that ONLY in general Art. X, § 3, new in the 1968 Constitution, is there a definition of when a vacancy occurs, that section providing that a vacancy in office "shall occur" upon inter alia "resignation." Nowhere else therein is a vacancy in office defined; the other related provisions, including the specific one as to judges, state how and when it is to be filled, but not when it OCCURS.
Id. at 779. In the absence of a specific provision governing judicial vacancies, the Court in Spector referred to article X, section 3, the provision of the Florida Constitution that governed vacancies in office in general, to determine when a judicial vacancy occurred:[2]
The 1885 Constitution in Art. IV, § 7, authorized the Governor to fill a vacancy "(W)hen any office, from any cause, shall become vacant. . . ." Now, however, the current 1968 constitutional provision controls and also takes precedence over statutes such as Fla. Stat. § 114.01 providing that an office shall be "deemed vacant" in cases there enumerated, one being "resignation." . . . Thus, absent a specific provision in the 1968 Constitution as to judges (as there is in Art. V, §§ 10 and 11 regarding the manner of filling the vacancy) the general provision must apply, that a vacancy "shall occur" upon "resignation."
Id. Relying on article X, section 3, the Court in Glisson concluded that the elected justice's resignation letter created a vacancy in that elected position. See id. at 780. However, this constitutional provision does not apply to the vacancy in Judge Ervin's position.
In 1976, the Florida Constitution was amended to implement a merit retention system for district court judges and Florida Supreme Court justices, and this amendment provided a specific explanation of when a vacancy occurs if a justice or judge is ineligible to qualify for merit retention:
If a justice or judge is ineligible or fails to qualify for retention, a vacancy shall exist in that office upon the expiration of the term being served by the justice or judge.

Art. V, § 10(a), Fla. Const. (emphasis supplied).[3]
*1093 This Court has determined that "[t]he rules which govern the construction of statutes are generally applicable to the construction of constitutional provisions." Coastal Fla. Police Benev. Ass'n, Inc. v. Williams, 838 So.2d 543, 548 (Fla.2003). This Court has consistently stated that "[a]ny inquiry into the proper interpretation of a constitutional provision must begin with an examination of that provision's explicit language. If that language is clear, unambiguous, and addresses the matter in issue, then it must be enforced as written." Id. (quoting Fla. Soc'y of Ophthalmology v. Fla. Optometric Ass'n, 489 So.2d 1118, 1119 (Fla.1986)). We have further noted that "[t]he words and terms of a Constitution are to be interpreted in their most usual and obvious meaning, unless the text suggests that they have been used in a technical sense. The presumption is in favor of the natural and popular meaning in which the words are usually understood by the people who have adopted them." Butterworth v. Caggiano, 605 So.2d 56, 58 (Fla.1992) (quoting City of Jacksonville v. Cont'l Can Co., 113 Fla. 168, 151 So. 488, 489-90 (1933)).
The definition for when a vacancy occurs with regard to merit retention judges is clear and unambiguousa vacancy exists upon the expiration of the term of the judge or justice. See art. V, § 10(a), Fla. Const. Therefore, we conclude that this constitutional provision must be applied in this circumstance as it is clearly written and as it was adopted by the voters. See Williams, 838 So.2d at 550; Caggiano, 605 So.2d at 58.[4] Moreover, the lack of ambiguity in the Florida Constitution renders it unnecessary to review the history of the 1976 revision to article V, section 10, to determine when a vacancy in a merit retention judgeship occurs. See Public Health Trust of Dade County v. Lopez, 531 So.2d 946, 949 (Fla.1988) ("When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning") (quoting Holly v. Auld, 450 So.2d 217, 219 (Fla.1984)).[5]
*1094 Finally, since there is a specific provision in article V governing judges and justices who are subject to merit retention, the instant case is totally distinguishable from earlier judicial vacancy cases which involved elected judicial officials and in which the general definition of vacancy provided in article X, section 3, of the Florida Constitution was applied. See, e.g., Advisory Opinion to the Governor re Sheriff & Judicial Vacancies Due to Resignations, 928 So.2d 1218 (Fla.2006); Advisory Opinion to the Governor re Appointment or Election of Judges, 824 So.2d 132 (Fla.2002); In re Advisory Opinion to the Governor (Judicial Vacancies), 600 So.2d 460 (Fla.1992); Judicial Nominating Comm'n, Ninth Circuit v. Graham, 424 So.2d 10 (Fla.1982); Spector v. Glisson, 305 So.2d 777 (Fla.1974).

CONCLUSION
Accordingly, we answer your question regarding the mandatory retirement of Judge Ervin by stating it is our opinion that the clear and unambiguous language of article V, section 10(a) of the Florida Constitution dictates that Judge Ervin's position will become vacant when his term expires.
Respectfully,
/s/ R. Fred Lewis
R. Fred Lewis
/s/ Charles T. Wells
Charles T. Wells
/s/ Harry Lee Anstead
Harry Lee Anstead
/s/ Barbara J. Pariente
Barbara J. Pariente
/s/ Peggy A. Quince
Peggy A. Quince
/s/ Raoul G. Cantero, III
Raoul G. Cantero, III
/s/ Kenneth B. Bell
Kenneth B. Bell
CANTERO, J., concurring.
I agree with the majority that the plain language of the Florida Constitution dictates our answer to the Governor's question. I write only to emphasize that in these circumstances, nothing in the Florida Constitution prevents the relevant judicial nominating commission ("JNC") from beginning the process of nominating the retiring judge's successor before the vacancy actually occursthat is, before expiration of the judge or justice's term. In terms of the nominating process, the Constitution requires only that "nominations shall be made within thirty days from the occurrence of the vacancy unless the period is extended by the governor for a time not to exceed thirty days." The constitution is silent on when the process must begin.[6] We have previously emphasized, *1095 however, that "[v]acancies in office are to be avoided whenever possible. We are confident that the framers of article V intended that the nominating and appointment process would be conducted in such a way as to avoid or at least minimize the time that vacancies exist." In re Advisory Opinion to the Governor (Judicial Vacancies), 600 So.2d 460, 462 (Fla.1992).
Today's opinion renders some period of vacancy virtually unavoidable when a justice or judge fails to qualify for a retention election. Unless the JNCs begin the nominating process before the vacancies actually occur, by requesting applications, interviewing applicants, and deliberating about potential nominees, that period may extend for up to four months before the governor appoints a successor. This period does not even account for the inevitable delay between the date of the appointment and the date the appointee actually takes office. Many appointments to the state appellate courts and to this Court entail relocations to another city, which can delay the process by several weeks. Thus, if JNCs were forced to wait until the outgoing judge leaves office before even advertising the opening, the affected court may be left without a necessary judge for months. In a court such as ours, where most cases are heard en banc, the burden on the remaining justices would be enormous.
In my opinion, the Florida Constitution grants the JNCs the flexibility to begin the nomination process before the vacancy actually occurs, therefore allowing them to minimize the period in which the position remains vacant. It is in the interest of the people of Florida that such vacancies be filled as quickly as possible.
BELL, J., concurs.
NOTES
[1] Article IV, section (1)(c) provides in full:

The governor may request in writing the opinion of the justices of the supreme court as to the interpretation of any portion of this constitution upon any question affecting the governor's executive powers and duties. The justices shall, subject to their rules of procedure, permit interested persons to be heard on the questions presented and shall render their written opinion not earlier than ten days from the filing and docketing of the request, unless in their judgment the delay would cause public injury.
[2] Article X, section 3, of the Florida Constitution currently provides:

Vacancy in office shall occur upon the creation of an office, upon the death, removal from office, or resignation of the incumbent or the incumbent's succession to another office, unexplained absence for sixty consecutive days, or failure to maintain the residence required when elected or appointed, and upon failure of one elected or appointed to office to qualify within thirty days from the commencement of the term.
This provision clearly has no application to the current facts.
[3] This language has not changed since the Florida Constitution was amended in 1976.
[4] The language that was placed on the 1976 ballot further supports the conclusion that a vacancy is created upon the expiration of the term of a judge or justice who is ineligible to qualify for merit retention. The ballot language provided:

Proposing an amendment to the State Constitution to provide . . . that justices of the supreme court and judges of district courts of appeal submit themselves for retention or rejection by the electors in a general election every six years, and that failure to submit to a vote for retention or rejection, or a vote of rejection by the electors, will result in a vacancy in the office upon expiration of the current term. . . .
CS for SJR 49, 81 (1976) (proposed art. V, §§ 3, 10-11, Fla. Const.) (emphasis supplied).
[5] Nonetheless, a commentary to the 1976 amendment to section 10(a) may be read to support the express language in the constitution that a vacancy occurs upon the expiration of the judge or justice's term. The commentary provides in pertinent part:

The retention election poses the simple question "Shall the justice or judge be retained in office?" If the answer is yes, the justice or judge will serve a six-year term; if the answer is no, a vacancy is created and it will be filled through the nominating commission process.
Art. V, § 10, Fla. Const., 26 Fla. Stat. Ann. 51 cmt. (Supp.2006). Under this commentary, if the electors vote for retention, it is clear that the justice or judge "will serve a six-year term" from the date that his or her prior term expires (i.e., the six-year term does not commence at the time that the electors vote to retain the judge or justice). Thus, if the electors vote not to retain a judge, the vacancy similarly will occur at the expiration of the term served by that judge. There is no indication from the commentary that the date a judge or justice's term "expires," thereby leading to either the commencement of a new six-year term or a vacancy in that judgeship, varies based on whether the judge or justice has been, or is eligible to be, retained. Analogously, and more pertinent to the instant case, a judge who is subject to mandatory retirement under the constitution cannot control when the vacancy in his or her office will occur by writing a letter to the Governor announcing that he or she is prohibited from serving an additional term.
[6] There may well be provisions of the Uniform Rules of Procedure for District Courts of Appeal Judicial Nominating Commissions relevant to this issue. I consider here only the requirements of the Florida Constitution.