# Supreme Court of Florida

FRIDAY, NOVEMBER 16, 2018

**CASE NO.: SC18-1573**

| LEAGUE OF WOMEN VOTERS OF FLORIDA, ET AL. | vs. | RICK SCOTT, GOVERNOR, ET AL. |
|---|---|---|
| Petitioner(s) | | Respondent(s) |

On October 15, 2018, we issued an order holding that, barring unforeseen circumstances and assuming the Justices at issue finish their terms, the vacancies created by the mandatory retirements of Justice Pariente, Justice Lewis, and Justice Quince would occur outside Governor Scott's term in office. Therefore, we explained, Governor Scott lacked the authority both to make appointments to fill those vacancies, and also to direct the JNC to submit its nominations by November 10, 2018.

We now further hold that the phrase "within thirty days from the occurrence of a vacancy" in article V, section 11(c) of the Florida Constitution requires the JNC to make its nominations no later than thirty days after the occurrence of a vacancy, and does not prohibit the JNC from acting before a vacancy occurs.

Petitioners have requested that the JNC reopen its application period for the vacancies at issue in this case. We recognize that there is no impediment to the JNC reopening its application period.

Accordingly, except to the extent our October 15, 2018, order provides

otherwise, the Emergency Petition for Writ of Quo Warranto is hereby denied, and

the Emergency Supplemental Petition for Writ of Quo Warranto and for

Constitutional Writ is likewise hereby denied.

CANADY, C.J., and POLSTON, LABARGA, and LAWSON, JJ., concur.
LAWSON, J., concurs and concurs specially with an opinion, in which
CANADY, C.J., and LABARGA, J., concur.
LEWIS, J., dissents with an opinion, in which PARIENTE, J., concurs.
QUINCE, J., dissents with an opinion, in which PARIENTE and LEWIS, JJ.,
concur.

NO REHEARING WILL BE ALLOWED.

LAWSON, J., concurring and concurring specially.

I fully concur in the order denying any additional relief in this case and write

separately to respectfully address Justice Lewis's dissenting contention that "[t]he

majority today has reached an unfounded result that ignores the plain and explicit

language of the Florida Constitution that the voters have established as our sacred

governing document."

Two provisions of the Florida Constitution are at issue. The first, article V,

section 11(a), deals with the Governor's appointment authority and the timing of

those appointments. In relevant part, that section states: "*Whenever a vacancy*

*occurs* in a judicial office to which election for retention applies, the governor shall

fill the vacancy by" appointment.  Art. V, § 11(a), Fla. Const. (emphasis added).

This provision served as the basis for our unanimous October 15, 2018, declaration

in this case that barring unforeseen circumstances, the vacancies created by the

mandatory retirements of Justices Pariente, Lewis, and Quince will occur outside

of Governor Scott's term in office—a proposition consistently agreed to by

Governor Scott in filings and argument before this Court.

The second provision, article V, section 11(c), deals with a judicial

nominating commission's nomination authority and the timing of its nominations.

That provision reads in relevant part:

> (c)  The nominations shall be made *within thirty days from* the occurrence of a vacancy unless the period is extended by the governor for a time not to exceed thirty days.

Art. V, § 11(c), Fla. Const. (emphasis added).

Since their inception, Florida's judicial nominating commissions have read

this language as creating a deadline by which they must make nominations—and

thereby allowing them to make their nominations prior to the date of a vacancy.

That is the most reasonable reading of the language and is consistent with this

Court's precedent analyzing similar language.  *See Barco v. Sch. Bd. of Pinellas*

*Cty.*, 975 So. 2d 1116 (Fla. 2008).  In *Barco*, this Court unanimously held the

phrase "within 30 days after" to mean "not later than" 30 days after. *Id.* at 1123-24. Applying the unanimous *Barco* reasoning, article V, section 11(c), requires that a judicial nominating commission make its nominations *no later than* 30 days after the vacancies occur—which authorizes nominations prior to the vacancies. The fact that this is how Florida's JNCs have consistently interpreted the people's constitution also carries legal significance because a "constitutional . . . construction traditionally given to a provision [of the constitution] by those officers affected thereby is presumably correct" and should not be rejected unless "manifestly erroneous." *Fla. Soc'y of Ophthalmology v. Fla. Optometric Ass'n*, 489 So. 2d 1118, 1120-21 (Fla. 1986) (citation omitted).

There are no other constitutional provisions alleged by Petitioners or cited in the dissent as relevant to the issue of whether the Supreme Court Judicial Nominating Commission is empowered to act prior to the occurrence of an actual vacancy. Indeed, even Petitioners have appropriately acknowledged that "nothing in the Florida Constitution prevents a JNC from starting its process before the vacancy." Emergency Petition for Writ of Quo Warranto at 20. I conclude based upon a reasoned analysis of the relevant constitutional language, and our relevant precedent, that the Supreme Court JNC has not acted outside its authority by

initiating its process to make nominations to fill the certain-to-occur and

impending vacancies of my valued colleagues.

CANADY, C.J., and LABARGA, J., concur.

LEWIS, J., dissenting.

The majority today has reached an unfounded result that ignores the plain

and explicit language of the Florida Constitution that the voters have established as

our sacred governing document. Instead of faithfully interpreting the language set

forth in our Constitution, the majority presents flawed reasoning to support its

desired result. Simply put, the Judicial Nominating Commission (JNC) has no

power to act without the occurrence of an actual vacancy, according to the plain

language of the Florida Constitution and the JNC's own Rules of Procedure. I will

not sit silently while the majority muddles—or disregards—our Constitution and

related rules. Accordingly, I would dissent from the majority's order.

The process for filling a vacancy in judicial office is specifically governed

by article V, section 11 of the Florida Constitution. In relevant part, section 11(a)

provides in full:

> (a) *Whenever a vacancy occurs* in a judicial office to which
> election for retention applies, the governor shall fill the vacancy by
> appointing for a term ending on the first Tuesday after the first
> Monday in January of the year following the next general election

occurring at least one year after the date of appointment, one of not
fewer than three persons nor more than six persons nominated by the
appropriate judicial nominating commission.

Art. V, § 11(a), Fla. Const. (emphasis added). Further, the relationship of a

vacancy and nomination is a constitutionally directed process governed by section

11(c):

(c) The nominations shall be made within thirty days *from the occurrence of a vacancy* unless the period is extended by the governor for a time not to exceed thirty days. The governor shall make the appointment within sixty days after the nominations have been certified to the governor.

Art. V, § 11(c), Fla. Const. (emphasis added). Governor Bush sought this Court's

advisory opinion in *Advisory Opinion to the Governor re Judicial Vacancy Due To*

*Mandatory Retirement* (*Mandatory Retirement*), 940 So. 2d 1090 (Fla. 2006), and

sought to make a prospective appointment. *Id.* at 1091. However, this Court

unanimously agreed that the vacancy occurred upon the expiration of the term. *Id.*

Further, in recognizing that JNCs cannot begin their work until a vacancy

occurs, this Court's full quote in *In re Advisory Opinion to the Governor* (*Judicial*

*Vacancies*), 600 So. 2d 460, 462 (Fla. 1992), suggested that resignations be

submitted in advance to avoid prolonged vacancies:

Vacancies in office are to be avoided whenever possible. We are
confident that the framers of article V intended that the nominating

and appointment process would be conducted in such a way as to avoid or at least minimize the time that vacancies exist. *Judges are encouraged to and do submit their resignations, to be effective in the future, at a time that permits the process to proceed in an orderly manner and keep the position filled.*

*Id.* (emphasis added).

Although made in the context of a vacancy caused by resignation with a future effective date, *Judicial Vacancies* then went on to confirm that the JNC process begins *after* a vacancy occurs:

When a letter of resignation to be effective at a later date is received and accepted by you, *a vacancy in that office occurs and actuates the process to fill it. The duties of the appropriate nominating commission start and its list should be submitted within thirty days of your acceptance of the resignation* unless extended an additional thirty days. The appointment shall be made within sixty days after receipt of the nominations.

*Id.* (emphasis added); *id.* at 463 ("A nominating commission's job begins when you receive and accept a letter of resignation."); *cf. In re Advisory Opinion to Governor*, 276 So. 2d 25, 29-30 (Fla. 1973) ("Of course, resignations under Fla. Stat. s 99.012, F.S.A. (Resign to Run Law) or under similar circumstances do not create *a vacancy which activates the duties of the commissions or empower the Governor to make direct appointments*." (emphasis added)).

Further, this Court's decision in *Pleus v. Crist*, 14 So. 3d 941 (Fla. 2009),

read the plain language of the constitution to govern the time that the JNC can

function:

> *Article V, section 11(c), governs the time periods applicable to judicial nominating commissions in nominating judicial applicants to fill vacancies and to the governor in making judicial appointments.* That provision of the constitution expressly requires the following: "The nominations shall be made within thirty days *from the occurrence of a vacancy* unless the period is extended by the governor for a time not to exceed thirty days. The governor shall make the appointment within sixty days after the nominations have been certified to the governor."

*Id.* at 943 (emphasis added) (quoting art. V, § 11(c), Fla. Const.).

Notably, even the Rules of Procedure for the Supreme Court JNC buttress

the foundational principle that the JNC *cannot* begin receiving applications until

after a vacancy occurs:

> *Whenever a vacancy occurs* on the Supreme Court . . . the Supreme Court Judicial Nominating Commission (the "Commission") *shall receive* and review applications submitted by those applicants who timely request consideration.

(Emphasis added.) The establishment of these Rules of Procedure is

constitutionally required for each JNC in Florida. *See* art. V, § 11(d), Fla. Const.

("Uniform rules of procedure shall be established by the judicial nominating

commissions at each level of the court system."). Further, "JNCs are required to

operate in accordance with the Uniform Rules of Procedure applicable to each level of JNC." Judicial and Judicial Nominating Commission Information, http://www.flgov.com/judicial-and-judicial-nominating-commission-information/ (last visited Oct. 31, 2018).

The same section of the JNC's rules also provides that the JNC must give notice *of the vacancy*:

> The Commission shall provide notice of the vacancy and the deadline for applications to The Florida Bar, county and local bar associations (including minority and women's bar associations), and at least one newspaper of general circulation in the relevant jurisdiction.

Providing notice of a vacancy, however, necessarily implies that the vacancy must actually exist before notice is given. Thus, the language set forth in the Rules of Procedure support the contention that the JNC "shall receive . . . applications" only "[w]henever a vacancy occurs."

Likewise, past governors have also interpreted the JNC process in the same manner. *See, e.g.*, *Mandatory Retirement*, 940 So. 2d at 1091 (Governor Bush's letter noted, "Although I understand that a physical vacancy occurs upon the termination of the term, a question has arisen as to when a constitutional vacancy occurs, effectuating the process to fill it."); *Advisory Op. to Gov. re Appointment*

*or Election of Judges*, 983 So. 2d 526, 527 (Fla. 2008) (Governor Crist's letter

noted that, in accord with this Court's 2002 advisory opinion quoted above, his

general counsel notified a JNC of a vacancy after a vacancy occurred due to failure

of any candidates to qualify for election, and that the JNC advertised the vacancy

and application deadline the next day).

Similarly, even Governor Scott's current official state website indicates that

he notifies the JNC of a vacancy *after* the vacancy occurs, rather than before. *See*

Judicial and Judicial Nominating Commission Information,

http://www.flgov.com/judicial-and-judicial-nominating-commission-information/

(last visited Oct. 31, 2018) ("*Upon notification of a vacancy*, the Governor requests

the Chair of the JNC to convene the JNC for the purpose of selecting and

submitting names of qualified individuals to the Governor for appointment to the

bench. . . . The JNC has no more than sixty days from the time it is requested to

convene to nominate no fewer than three and no more than six applicants to the

Governor. The Governor has sixty days to appoint a judge from among the

nominees." (emphasis added)).

Therefore, based on the Constitution, the case law from our Court, and the

JNC's own Rules of Procedure, it is, in my view, absolutely clear that the Supreme

Court JNC cannot begin accepting applications under the nomination process until a vacancy has occurred and certainly cannot terminate that process before a vacancy has even occurred. The JNC is constitutionally powerless to act in the abstract. It can only come to life and operate after the governor validly submits notice that a vacancy exists, and the governor can only do so once he or she has the legitimate power and authority to appoint (i.e., when the vacancy occurs). The contrary result reached by the majority today vests in the JNC powers independent of the governor to act and select nominees, even years before any actual vacancy occurs. Under the majority's misdirected result, the JNC could have independently begun and concluded the nomination process six years ago, because it was common knowledge at that time that the mandatory retirement age set forth in the Constitution would become operative six years in the future. However, allowing the JNC to begin to operate before any vacancy occurs runs afoul of the limited scope that JNCs were granted under our Florida Constitution. In my view, the unlimited independent power created by the majority today is a more than puzzling result that has absolutely no constitutional or legal justification.

Instead, the reasoning of the majority simply pulls a portion of one sentence which has nothing whatsoever to do with a JNC's authority as to when it may

begin the process and only describes when the nominations must be completed to reach its misdirected result. That defective reasoning produces a misdirection of Florida's constitutional process for the operation of the JNC. The portion of the sentence utilized by the majority does not support the result here that JNCs have the unbridled independent authority to conduct the nomination process totally divorced from when a judicial vacancy actually occurs and without any direction by the Executive having the valid power to make the ultimate appointment. *See* art. V, § 11(c), Fla. Const. ("The nominations shall be made within thirty days *from the occurrence of a vacancy . . . .*" (emphasis added)). The majority's order is the expression of an incorrect result, not a proper intellectual and legal analysis of the very important issue with which we are confronted.

Adding insult to injury, the concurring and concurring specially opinion warps this Court's prior decision in *Barco v. School Board of Pinellas County*, 975 So. 2d 1116 (Fla. 2008), which was a case concerning the timing of motions for attorneys' fees under Florida Rule of Civil Procedure Rule 1.525 in an existing case, as lending support to the argument that the JNC has the authority to begin the nomination process before a vacancy occurs. This contention is plainly disingenuous and totally unsupported. *Barco*'s holding determined the final and

ending deadline within which a party could file a motion for attorneys' fees in an existing, pending case. It did not, however, determine the beginning date on which a party could file a motion without a case existing. Furthermore, our holding in *Barco* was made in the context of a motion filed in an *existing* case.[1] The concurring and concurring specially opinion's attempt to read a beginning date before a case was in existence within *Barco*'s holding is inappropriate. Instead of attempting to distinguish or refute the numerous, directly relevant cases mentioned above that inform my analysis on the onset of the JNC nomination process, the concurrence and concurrence specially simply tries to play hide-the-ball and erroneously attempts to portray applicability of *Barco* where none exists.

Additionally, and tellingly, the concurring and concurring specially opinion provides absolutely no support to justify the premise that "[s]ince their inception, Florida's judicial nominating commissions have read this language as creating a deadline by which they must make nominations—and thereby allowing them to

---

1. Specifically, in *Barco*, we noted that, "despite the requirement that motions for attorneys' fees be filed within a reasonable time after the entry of judgment, a party seeking attorneys' fees also had to plead entitlement to fees in the complaint or answer." 975 So. 2d at 1119. Thus, the right to file this motion arises only after a party has proven entitlement to those attorneys' fees within an existing case that is being litigated.

make their nominations prior to the date of a vacancy." Concurring and

Concurring Specially Op. at 3. Nevertheless, what prior JNCs have or have not

done without challenge under different circumstances not present in the instant

litigation is in no way controlling authority.

Finally, the concurring and concurring specially opinion's view disregards

the principles of constitutional construction, which guide our interpretation of

constitutional provisions. This Court has clearly and repeatedly explained these

rules of construction:

> We begin by observing that the polestar of constitutional construction is voter intent. *City of St. Petersburg v. Briley, Wild & Assocs., Inc.*, 239 So. 2d 817, 822 (Fla. 1970). . . . Further, when interpreting a constitutional provision we must give effect to every provision and every part thereof. *Dep't of Envtl. Prot. v. Millender*, 666 So. 2d 882, 886 (Fla. 1996) ("[E]ach subsection, sentence, and clause must be read in light of the others to form a congruous whole so as not to render any language superfluous."). "Ambiguity is an absolute prerequisite to judicial construction" and "when constitutional language is precise, its exact letter must be enforced . . . ." *Fla. League of Cities v. Smith*, 607 So. 2d 397, 400 (Fla. 1992). These foundational principles guide our analysis.
>
> In interpreting a constitutional amendment, we begin with the amendment's plain language. *Ervin v. Collins*, 85 So. 2d 852, 855 (Fla. 1956) ("We are called on to construe the terms of the Constitution, an instrument from the people, and we are to effectuate their purpose from the words employed in the document."); *see also Fla. Soc'y of Ophthalmology v. Fla. Optometric Ass'n*, 489 So. 2d 1118, 1119 (Fla. 1986) ("Any inquiry into the proper interpretation of

a constitutional provision must begin with an examination of that provision's explicit language.").

*Benjamin v. Tandem Healthcare, Inc.*, 998 So. 2d 566, 570 (Fla. 2008) (footnote omitted).

These rules of constitutional construction under which this Court operates require that we read "each subsection, sentence, and clause . . . in light of the others to form a congruous whole so as not to render any language superfluous." *Millender*, 666 So. 2d at 886. The concurring and concurring specially opinion attempts to use the end date of the nomination process (i.e., "within thirty days from the occurrence of a vacancy") to inform the onset of the JNC's constitutional authority to *begin* this process. This incorrect interpretation fails to read article V, section 11 in its entirety in order to form a congruous whole. Our Constitution does not contain a separate provision that indicates when a JNC may *begin* its nomination process. It does, however, explicitly delineate when the governor gains the appointment power necessary to convene the JNC in order to begin the nomination process—"Whenever a vacancy occurs." Art. V, § 11(a). Reading the language of section 11(a) alongside that of section 11(c), and giving each its full effect, it becomes clear that the beginning point at which the JNC can start the nomination process is "[w]henever a vacancy *occurs*." *Id.* (emphasis added). The

majority's, and the concurring and concurring specially opinion's, desperate attempt at reading contrary meaning into this provision is a frightening attempt to seize upon a single phrase of a constitutional provision in order to pervert the subject and actual words to reach a desired result. Our democracy deserves better.

Abiding by the clear will of the people of this State, as set forth in our Florida Constitution, in an impartial manner and without regard for predetermined results is a vital component of our democracy and our judicial system. The people of Florida have entrusted in this Court the responsibility to apply the Constitution faithfully and independently of our own personal opinions and ideologies of what result is "right." Today, instead of adhering to these foundational principles, the majority charts its own path and completely ignores the will of the people as expressed in actual words in our documents to reach its result. The result reached by the majority is one that muddles and contorts the language of the Constitution, process, and applicable rules, which is, in my view, an unacceptable approach and a misinterpretation.

For these reasons, I dissent.

PARIENTE, J., concurs.

QUINCE, J., dissenting.

I dissent because while the majority's solution may be a pragmatic one, it is not a constitutional one. In this Court's unanimous order dated October 15, 2018, the Court granted the petition for writ of quo warranto against Governor Rick Scott, holding that it was the incoming governor and not Governor Scott who had the authority to appoint the retiring justices' successors. We explained:

> The petition for writ of quo warranto against Governor Rick Scott is hereby granted. The governor who is elected in the November 2018 general election has the sole authority to fill the vacancies that will be created by the mandatory retirement of Justices Barbara J. Pariente, R. Fred Lewis, and Peggy A. Quince, provided the justices do not leave prior to the expiration of their terms at midnight between January 7 and January 8, 2019, and provided that the governor takes office immediately upon the beginning of his term. Governor Scott exceeded his authority by directing the Supreme Court Judicial Nominating Commission ("the JNC") to submit its nominations to fill these vacancies by November 10, 2018. The sixty-day period after nominations have been certified within which the governor is required to make appointments, as set forth in article V, section 11(c), of the Florida Constitution begins to run only when the governor with the authority to appoint has taken office. As the JNC is an independent body, it is not bound by Governor Scott's deadlines.

*League of Women Voters v. Scott*, No. SC18-1573, order at 1 (Fla. order filed Oct. 15, 2018).

Today we are answering the question left open in the October 15 order, concerning what actions the JNC can engage in that are consistent with the Florida

Constitution.  We are further interpreting article V, section 11(c), of the Florida

Constitution, which provides:

> The nominations shall be made within thirty days from the occurrence of a vacancy unless the period is extended by the governor for a time not to exceed thirty days.  The governor shall make the appointment within sixty days after the nominations have been certified to the governor.

Art. V, § 11(c), Fla. Const.

The first and second sentences of this constitutional provision must be read

together.[2]  This Court has already held that the sixty days referenced in the second

sentence begins when the new governor takes office.  *See Scott*, No. SC18-1573,

order at 1.

The question then is when the JNC can make and certify its nominations to

the governor.  Although the majority interprets "within thirty days from the

occurrence of a vacancy," art. V, § 11(c), Fla. Const., to mean "no later than thirty

days after the occurrence of a vacancy," it does so without a constitutional basis or

---

2.  "[I]n construing multiple constitutional provisions addressing a similar subject, the provisions 'must be read in pari materia to ensure a consistent and logical meaning that gives effect to each provision.' "  *In re Senate Joint Resolution of Legislative Apportionment 1176*, 83 So. 3d 597, 659 (Fla. 2012) (quoting *Caribbean Conservation Corp. v. Fla. Fish & Wildlife Conservation Comm'n*, 838 So. 2d 492, 501 (Fla. 2003)).

considering both sentences together. While that might be a practical solution, the Constitution must prevail. Further, under the majority's interpretation, there could be a gap between when the JNC makes its nominations, i.e., up to thirty days before the governor takes office,[3] and the time for the governor to act, i.e., sixty days after the new governor takes office.

In my view, the JNC cannot certify its nominations before the new governor takes office, and the sixty-day period can run only from when the "nominations have been certified to the governor." Art. V, § 11(c), Fla. Const. Reading the first and second sentences together, "within," as used in article V, section 11(c), must mean *after* the vacancies—not before *and* after. *See Judicial Nominating Comm'n, Ninth Cir. v. Graham*, 424 So. 2d 10, 11 (Fla. 1982) ("A nominating commission is a constitutionally established body, mandated by the constitution to submit the nominations of three persons to the governor within thirty days *following* a judicial vacancy." (emphasis supplied) (citing art. V, § 11, Fla. Const.)). Therefore, the

---

3. Under the majority's interpretation, this gap could be as long as sixty days if the thirty-day extension in article V, section 11(c) is utilized, assuming that there is a governor who is authorized to grant the extension.

JNC may not make or certify its nominations prior to the occurrence of the vacancies at issue in this case.

Even if the word "within," as used in article V, section 11(c), allows the JNC to make or certify its nominations before the vacancies, the earliest it could do so would be December 8, 2018—thirty days before the vacancies at issue in this case occur, assuming the justices complete their terms. The majority's interpretation of "within" ignores that we have already determined that the incoming governor will have the authority to make the appointments at issue in this case, not Governor Scott. If Governor Scott is unable to make the appointments, he is similarly unable to utilize the thirty-day extension provided for in article V, section 11(c). Thus, if "within" is interpreted to go backward and forward, the earliest the JNC can make or certify the nominations is December 8, 2018. Then, if the new governor so chooses, he may utilize the thirty-day extension once he assumes office.

Lastly, because the October 8, 2018, application deadline was set by the JNC in response to Governor Scott's unauthorized action, I would require the JNC to

reopen the application process at least through December 8, 2018, to allow

additional candidates to apply, as requested by Petitioners and amici.[4]

PARIENTE and LEWIS, JJ., concur.

A True Copy
Test:



John A. Tomasino
Clerk, Supreme Court

so
Served:

ELAINE L. THOMPSON
RAOUL G. CANTERO
LASHAWNDA K. JACKSON
SANDY BOISROND
MELBA V. PEARSON
THOMAS D. HALL

---

4. Amici include the Florida Association for Women Lawyers—joined by the Wilkie D. Ferguson, Jr. Bar Association, the Caribbean Bar Association, the Gwen S. Cherry Black Women Lawyers Association, the Daniel Webster Perkins Bar Association, Inc., the Haitian Lawyers Association, the Virgil Hawkins Florida Chapter National Bar Association, and the Fred G. Minnis, Sr. Bar Association, the George Edgecomb Bar Association—the TJ Reddick Bar Association, and the South Florida Chapter of the National Black Prosecutors Association.

DANIEL E. NORDBY
TOMIKA COLE
COURTNEY BREWER
CHARISE MORGAN
MEREDITH L. SASSO
VALERIA OBI
MONIQUE D. HAYES
CARMEN MILLER
JONATHAN ANTHONY MARTIN
GEORGE T. LEVESQUE
KRISTINA MILLS
JOHN S. MILLS
ALEXIS LAMBERT
GREGORY SAMUEL REDMON
JENNIFER SHOAF RICHARDSON
JOHN MACIVER
KYLE S. BAUMAN