998 So.2d 566 (2008)
Jodi BENJAMIN, etc., Petitioner,
v.
TANDEM HEALTHCARE, INC., etc., Respondent.
No. SC07-2423.
Supreme Court of Florida.
December 23, 2008.
*567 Jane Kreusler-Walsh and Rebecca Mercier Vargas of Kreusler-Walsh, Compiani and Vargas, P.A., West Palm Beach, Florida, and Jeffrey M. Fenster and Stacie L. Cohen of Fenster, Cohen and Sobol, P.A., Sunrise, Florida, for Petitioner.
Thomas A. Valdez of Quintairos, Prieto, Wood, and Boyer, P.A., Tampa, Florida, for Respondent.
Karen L. Goldsmith and Jonathan S. Grout of Goldsmith, Grout and Lewis, P.A., Winter Park, Florida, on behalf of Florida Health Care Association; and Philip M. Burlington of Burlington and Rockenbach, P.A., West Palm Beach, Florida, on behalf of Florida Justice Association, as Amici Curiae.
WELLS, J.
In this case, we consider a certified question inquiring whether article X, section 25 of the Florida Constitution, titled "Patients' Right to Know About Adverse Medical Incidents" and also known as Amendment 7, encompasses nursing homes. In Tandem Healthcare, Inc. v. Benjamin, 969 So.2d 519 (Fla. 4th DCA 2007), the Fourth District Court of Appeal certified this question to be of great public importance:
WHETHER "NURSING HOMES" OR "SKILLED NURSING FACILITIES" FALL WITHIN THE DEFINITION *568 OF "HEALTH CARE FACILITY" OR "HEALTH CARE PROVIDER" AS CONTEMPLATED BY AMENDMENT 7 TO THE FLORIDA CONSTITUTION?
Id. at 521-22. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We approve the decision of the Fourth District and answer the certified question in the negative, finding that nursing homes do not fall within the definition of "health care facility" or "health care provider" in article X, section 25.
The Fourth District described the unfortunate facts underlying this case:
Jodi Benjamin, as personal representative of the estate of Marlene Gagnon, sued Tandem [Healthcare, Inc., a nursing home,] for negligence resulting in the death of Gagnon, a patient at the home. Gagnon suffered cardiac failure and brain damage when food became lodged in her airway [due to Tandem's alleged failure to serve her food in compliance with her treatment plan]. Benjamin requested that Tandem produce "all reports or records of any `Adverse Medical Incident'" involving Gagnon, as provided by Article X, section 25, of the Florida Constitution. [Benjamin] also requested peer review documents and quality assurance records.
Tandem Healthcare, 969 So.2d at 520. The trial court granted Benjamin's discovery request, and Tandem Healthcare appealed to the Fourth District. The Fourth District noted that the requested materials would normally be privileged as peer review and quality assurance records under Florida law. Id. Benjamin argued, however, that those peer review and quality assurance privileges had been abrogated when Florida's voters approved article X, section 25 of the Florida Constitution.
Article X, section 25 of the Florida Constitution was adopted in 2004.[1] This provision, also referred to as Amendment 7 *569 because of its numbering seventh on the November 2004 ballot, gave patients "a right to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident." Art. X, § 25(a), Fla. Const. It defines "health care facility" and "health care provider" as "hav[ing] the meaning given in general law related to a patient's rights and responsibilities." Id. § 25(c)(1). Petitioner contends that nursing homes fall under this definition.
The Fourth District concluded that article X, section 25, does not encompass nursing homes because section 25(c)(1) of that provision defines the terms as having the meaning given in "general law related to a patient's rights and responsibilities." Tandem Healthcare, 969 So.2d at 522. The Fourth District read the term "patient's rights and responsibilities" as a specific reference to section 381.026, Florida Statutes, titled "Florida Patient's Bill of Rights and Responsibilities." In reaching this conclusion, the Fourth District agreed with and relied upon the First District's opinion in Avante Villa at Jacksonville Beach, Inc. v. Breidert, 958 So.2d 1031 (Fla. 1st DCA 2007), stating:
The petitioner in Avante Villa was a nursing home, and the order on review, as in this case, compelled discovery of documents which the nursing home claimed were privileged. The [First D]istrict ... concluded that the nursing home was not subject to the amendment. Id. at 1032.
The district court focused on the following language of Article X, section 25: "The phrases `health care facility' and `health care provider' have the meaning given in general law related to a patient's rights and responsibilities." Art. X, § 25(c)(1), Fla. Const. (emphasis added). It noted that while there are provisions of general law that include nursing homes within the meaning of "health care facility" or "health care provider," only one statute deals with "a patient's rights and responsibilities," and that statute was section 381.026, enacted in 1991. That was the only statute using that language at the time Amendment 7 was adopted. The court, therefore, concluded that "the specific language in Amendment 7 requiring that the definition be `related to a patient's rights and responsibilities' can be reasonably interpreted as adopting the definitions used in the Florida Patient's Bill of Rights and Responsibilities." Id. at 1033.
Tandem Healthcare, 969 So.2d at 521. Accordingly, the Fourth District concluded that nursing homes were not encompassed by article X, section 25.[2]

*570 ANALYSIS
Our review of this question of constitutional construction is de novo. Zingale v. Powell, 885 So.2d 277, 280 (Fla. 2004). We begin by observing that the polestar of constitutional construction is voter intent. City of St. Petersburg v. Briley, Wild & Assocs., Inc., 239 So.2d 817, 822 (Fla.1970). "We are obligated to give effect to [the] language [of a Constitutional amendment] according to its meaning and what the people must have understood it to mean when they approved it." Id. Further, when interpreting a constitutional provision we must give effect to every provision and every part thereof. Dep't of Envtl. Prot. v. Millender, 666 So.2d 882, 886 (Fla.1996) ("[E]ach subsection, sentence, and clause must be read in light of the others to form a congruous whole so as not to render any language superfluous."). "Ambiguity is an absolute prerequisite to judicial construction" and "when constitutional language is precise, its exact letter must be enforced...." Fla. League of Cities v. Smith, 607 So.2d 397, 400 (Fla.1992). These foundational principles guide our analysis.[3]
In interpreting a constitutional amendment, we begin with the amendment's plain language. Ervin v. Collins, 85 So.2d 852, 855 (Fla.1956) ("We are called on to construe the terms of the Constitution, an instrument from the people, and we are to effectuate their purpose from the words employed in the document."); see also Fla. Soc'y of Ophthalmology v. Fla. Optometric Ass'n, 489 So.2d 1118, 1119 (Fla.1986) ("Any inquiry into the proper interpretation of a constitutional provision must begin with an examination of that provision's explicit language."). As pointed out by both the First and Fourth District Courts of Appeal, article X, section 25, defines "health care facility" and "health care provider" as having "the meaning given in general law related to a patient's rights and responsibilities." Art. X, § 25, Fla. Const. (emphasis added). Section 381.06 is titled "Florida Patient's Bill of Rights and Responsibilities." § 381.026, Fla. Stat. (2004) (emphasis added). The Fourth District held that "[a] plain reading of the amendment reflects its reference to section 381.026 by its name." Tandem Healthcare, 969 So.2d at 522. We agree.
Again, as noted by the district courts, when Amendment 7 was enacted no other statute in Florida used the phrase "patient's rights and responsibilities" in its title. No other statute used that phrase in its text either. Section 381.026, however, both used the phrase "patient's rights and responsibilities" in its title and also contained definitions of the terms that article X was defining when it used the phrase "patient's rights and responsibilities."
The statement of purpose accompanying article X, section 25, also refers to section 381.026 by name. The statement of purpose provides:
1) Statement and Purpose:
The Legislature has enacted provisions relating to a patients' bill of rights and responsibilities, including provisions relating to information about practitioners' qualifications, treatment[,] and financial aspects of patient care.
*571 In re Advisory Opinion to the Atty. Gen. re Patients' Right to Know About Adverse Med. Incidents, 880 So.2d 617, 618 (Fla. 2004) (emphasis added). The emphasized text is a near exact recitation of the title of section 381.026. The "provisions" described in the "Statement and Purpose" section quoted above also refer to rights included in section 381.026.[4] It is clear that article X, section 25 was drafted with the Florida Patient's Bill of Rights and Responsibilities, section 381.026, directly in mind.
As noted earlier in this opinion, the First District has also analyzed article X, section 25. See Avante Villa, 958 So.2d 1031. In Avante Villa, the First District held that article X, section 25, incorporated the definitions in section 381.026 and that under those definitions, a nursing home was not a "health care facility" or "health care provider." Id. at 1034. Avante Villa noted that section 381.026 had been titled "Florida Patient's Bill of Rights and Responsibilities" since 1991, over ten years prior to the adoption of article X, section 25. Accordingly, the First District concluded that the reference in article X, section 25, to "patient's rights and responsibilities" had to be deemed an intentional reference to the definitions contained in section 381.026. We agree.
Finally, we note that the use of the term "patient" and not "resident" in article X, section 25, further supports the conclusions of the First District and Fourth District that article X, section 25, does not apply to nursing homes. At the time article X, section 25, was passed, there was a long-standing distinction drawn between nursing home "residents" and health care "patients." Section 381.026 was the Florida Patient's Bill of Rights and Responsibilities. Nursing homes residents, however, had their own separate enumeration of rights. See § 400.022, Fla. Stat. (2004) ("Residents' rights"). Chapter 400, which regulates nursing homes, consistently used the term "resident," not "patient," to refer to nursing home occupants. Like the First and Fourth Districts, we find this distinction between use of the terms "residents" and "patients" persuasive. See Tandem Healthcare, 969 So.2d at 521; Avante Villa, 958 So.2d at 1033.

CONCLUSION
We conclude that the Fourth District correctly answered the certified question when it held that article X, section 25, does not apply to nursing homes. Article X, section 25, referred to section 381.026 in both its "Statement and Purpose" section and its actual text. Accordingly, we hold that it adopted the definitions in section 381.026, approve Tandem Healthcare, and answer the certified question in the negative.
It is so ordered.
QUINCE, C.J., and ANSTEAD and CANADY, JJ., concur.
PARIENTE, J., specially concurs with an opinion, in which QUINCE, C.J., and ANSTEAD, J., concur.
LEWIS, J., concurs in result only.
POLSTON, J., did not participate.
PARIENTE, J., specially concurring.
I agree with the result reached by the majority that "nursing homes" or "skilled *572 nursing home facilities" do not fall within the definition of "health care facility" or "health care provider" for the purposes of Amendment 7 to the Florida Constitution. This amendment, known as a "Patient's Right to Know," was adopted in 2004 and has already been the subject of litigation. We recently decided Florida Hospital Waterman, Inc. v. Buster, 984 So.2d 478 (Fla.2008), where we held in part that the amendment applied retroactively to medical incident records that existed before the effective date of the amendment. Id. at 494.
The drafters of this amendment could have provided a broad definition of "health care facility" or "health care provider" in the amendment. However, that is not what occurred. Instead, the operative section of the amendment, section 25(c)(1), states that the "phrases `health care facility' and `health care provider' have the meaning given in general law related to a patient's rights and responsibilities." As pointed out by the majority, the only general law that used the phrase "patient's rights and responsibilities" in 2004 and at present was section 381.026, Florida Statutes, titled "Florida's Patient's Bill of Rights and Responsibilities." Importantly, section 381.026 has never applied to nursing homes. Further, I agree with the majority that the use of the term "patient" rather than "resident" in the amendment also supports the conclusion that the provision is not applicable to nursing home facilities.
Although the majority asserts that the meaning of "health care provider" or "health care facility" is "plain," in my view the interpretation of these phrases can only be reached by reading the constitution in pari materia with the general law. See, e.g., Advisory Opinion to Atty. Gen. re Referenda Required for Adoption, 963 So.2d 210, 213 (Fla.2007) (reading select portions of the Florida Constitution and statutes in pari materia in determining that this Court had jurisdiction to review the validity of a financial impact statement). This principle of statutory construction is well accepted but is used where the meaning is not clear and unambiguous on the face of the provision. See Fla. Dept. of Envtl. Prot. v. ContractPoint Fla. Parks, LLC, 986 So.2d 1260, 1265 (Fla.2008) ("If the language of the statute is `clear and unambiguous and conveys a clear and definite meaning' there is no need to resort to statutory construction.") (quoting Holly v. Auld, 450 So.2d 217, 219 (Fla.1984)); Coastal Fla. Police Benev. Ass'n, Inc. v. Williams, 838 So.2d 543, 548 (Fla.2003) ("The rules which govern the construction of statutes are generally applicable to the construction of constitutional provisions."). It is my view that the definitions of "health care provider" and "health care facility" are not clear and unambiguous, but can be ascertained only when read in pari materia with section 381.026.
I acknowledge that there are strong policy reasons why the "right to know" about adverse medical incidents should extend to nursing homes. Our role, however, in statutory or constitutional construction, is not to decide the "best" policy, but only to ascertain the meaning of the phrases and words used in a provision. See, e.g., Tillman v. State, 934 So.2d 1263, 1270 (Fla. 2006) ("[I]t is not this Court's function to substitute its judgment for that of the Legislature as to the wisdom or policy of a particular statute.") (quoting State v. Rife, 789 So.2d 288, 292 (Fla.2001)).
I would also point out that although our task in constitutional construction is to ascertain the "intent of the voters," see, e.g., Lawnwood Medical Center, Inc. v. Seeger, 990 So.2d 503, 510 (Fla.2008), it is *573 unrealistic in this case to assume that a lay person would understand the term "health care provider" or "health care facility" by searching the Florida Statutes to determine where the phrase "patient's rights and responsibilities" was used. The ambiguous nature of the phrases "health care provider" and "health care facility" is also evidenced by the Fifth District's opinion in Florida Hospital Waterman, Inc. v. Buster, 932 So.2d 344 (Fla. 5th DCA 2006), approved in part and quashed in part, 984 So.2d 478 (Fla.2008), which assumed that the "privileges" eliminated by Amendment 7 included those involving nursing homes. See id. at 352 n. 6. Finally, although not dispositive, the Financial Impact Statement that was prepared, as required by the constitution, to advise on the costs associated with the amendment also assumed that the amendment extended to nursing homes by stating that the Agency for Health Care Administration (AHCA) "estimates that four staff and $400,000 for additional record requests associated with adverse incidents and assisted living facilities" would be required.
My bottom line is that it is difficult to conclude, as the majority has, that the phrases "health care provider" and "health care facility" are subject to only one "plain" interpretation. Nevertheless, I do conclude that the result reached by the majority is required in this case based on the principles of statutory construction that I have enunciated.
NOTES
[1] The provision states in full:

Section 25. Patients' right to know about adverse medical incidents.
(a) In addition to any other similar rights provided herein or by general law, patients have a right to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident.
(b) In providing such access, the identity of patients involved in the incidents shall not be disclosed, and any privacy restrictions imposed by federal law shall be maintained.
(c) For purposes of this section, the following terms have the following meanings:
(1) The phrases "health care facility" and "health care provider" have the meaning given in general law related to a patient's rights and responsibilities.
(2) The term "patient" means an individual who has sought, is seeking, is undergoing, or has undergone care or treatment in a health care facility or by a health care provider.
(3) The phrase "adverse medical incident" means medical negligence, intentional misconduct, and any other act, neglect, or default of a health care facility or health care provider that caused or could have caused injury to or death of a patient, including, but not limited to, those incidents that are required by state or federal law to be reported to any governmental agency or body, and incidents that are reported to or reviewed by any health care facility peer review, risk management, quality assurance, credentials, or similar committee, or any representative of any such committees.
(4) The phrase "have access to any records" means, in addition to any other procedure for producing such records provided by general law, making the records available for inspection and copying upon formal or informal request by the patient or a representative of the patient, provided that current records which have been made publicly available by publication or on the Internet may be "provided" by reference to the location at which the records are publicly available.
Art. X, § 25, Fla. Const.
[2] Neither the parties nor amici have argued in this case that nursing homes fall under the definitions of section 381.026. Section 381.026 states:

(b) "Health care facility" means a facility licensed under chapter 395.
(c) "Health care provider" means a physician licensed under chapter 458, an osteopathic physician licensed under chapter 459, or a podiatric physician licensed under chapter 461.
§ 381.026(2)(b)-(c), Fla. Stat. (2004). Chapter 395 addresses licensing of hospitals, ambulatory surgical centers, and mobile surgical facilities. See, e.g., § 395.022, Fla. Stat. (2004) (defining terms under chapter 395); § 395.001, Fla. Stat. (2004) (describing the intent of the Legislature in chapter 395). Chapters 458, 459, and 461 address licensing of physicians, osteopathic physicians, and podiatric physicians, respectively. See, e.g., § 458.301, Fla. Stat. (2004) (stating Legislative intent as to chapter 458); § 458.305, Fla. Stat. (2004) (defining terms); § 459.001, Fla. Stat. (2004) (stating Legislative intent as to chapter 459); § 459.003, Fla. Stat. (2004) (defining terms); § 461.001, Fla. Stat. (2004) (stating Legislative intent as to chapter 461); § 461.003, Fla. Stat. (2004) (defining terms).
[3] Respondent and petitioner also direct our attention to the ballot materials provided with article X, section 25. Although ballot materials are one source from which the voters' intent and the purpose of the amendment can be ascertained, see, e.g., Fla. Hosp. Waterman, Inc. v. Buster, 984 So.2d 478, 487-89 (Fla. 2008) (considering the ballot summary for article X, section 25), we conclude that the ballot materials do not shed significant light on the question certified in this case and therefore we do not discuss them further.
[4] See § 381.026(4)(b)(1), Fla. Stat. (2004) (discussing "the right to know the name, function, and qualifications of each health care provider"); § 381.026(4)(b)(3), Fla. Stat. (2004) (discussing the right to be given "information concerning diagnosis, planned course of treatment, alternatives, risks, and prognosis"); § 381.026(4)(c), Fla. Stat. (2004) (discussing the right to financial information and disclosure).