PER CURIAM.
The Attorney General of Florida has requested an opinion from this Court as to the validity of an initiative petition circulated pursuant to article XI, section 3, Florida Constitution, and as to the validity of the corresponding financial impact statement. We have jurisdiction. See art. IV, § 10; art. V, § 3(b)(10), Fla. Const. For the reasons explained below, we conclude that the proposed amendment complies with the single-subject requirement of article XI, section 3 of the Florida Constitution; the ballot title and summary comply with section 101.161, Florida Statutes (2012); and the financial impact statement complies with section 100.371, Florida Statutes (2012). Accordingly, we approve the proposed amendment and financial impact statement for placement on the ballot.
I. BACKGROUND
On April 18, 2013, the Attorney General petitioned this Court for an opinion as to the validity of an initiative petition sponsored by Florida’s Water and Land Legacy, Inc., and circulated pursuant to article XI, section 3 of the Florida Constitution. The Attorney General requested this Court’s opinion as to whether the proposed amendment complies with the single-subject requirement of article XI, section 3, and as to whether the ballot title and summary comply with section 101.161, Florida Statutes (2012). The sponsor has submitted a brief supporting the validity of the initiative petition. No opposing briefs or comments have been submitted to the Court.
The amendment would add a new section 28 to article X of the Florida Constitution. The full text of the proposed amendment states:
SECTION 28. Land Acquisition Trust Fund.—
a) Effective on July 1 of the year following passage of this amendment by the voters, and for a period of 20 years after that effective date, the Land Acquisition Trust Fund shall receive no less than 33 percent of net revenues derived from the existing excise tax on documents, as defined in the statutes in effect on January 1, 2012, as amended from time to time, or any successor or replacement tax, after the Department of Revenue first deducts a service charge to pay the costs of the collection and enforcement of the excise tax on documents.
b) Funds in the Land Acquisition Trust Fund shall be expended only for the following purposes:
1) As provided by law, to finance or refinance: the acquisition and improvement of land, water areas, and related property interests, including conservation easements, and resources for conservation lands including wetlands, forests, and fish and wildlife habitat; wildlife management areas; lands that protect water resources and drinking water sources, including lands protecting the water quality and quantity of rivers, lakes, streams, springsheds, and lands providing recharge for groundwater and aquifer systems; lands in the Everglades Agricultural Area and the Everglades Protection Area, as defined in Article II, Section 7(b); beaches and shores; outdoor recreation lands, including recreational trails, parks, and urban open space; rural landscapes; *50 working farms and ranches; historic or geologic sites; together with management, restoration of natural systems, and the enhancement of public access or recreational enjoyment of conservation lands.
2) To pay the debt service on bonds issued pursuant to Article VII, Section 11(e).
c) The moneys deposited into the Land Acquisition Trust Fund, as defined by the statutes in effect on January 1, 2012, shall not be or become commingled with the General Revenue Fund of the state.
The ballot title for the proposed amendment is “Water and Land Conservation— Dedicates Funds to Acquire and Restore Florida Conservation and Recreation Lands.” The summary for the proposed amendment states:
Funds the Land Acquisition Trust Fund to acquire, restore, improve, and manage conservation lands including wetlands and forests; fish and wildlife habitat; lands protecting water resources and drinking water sources, including the Everglades, and the water quality of rivers, lakes, and streams; beaches and shores; outdoor recreational lands; working farms and ranches; and historic or geologic sites, by dedicating 33 percent of net revenues from the existing excise tax on documents for 20 years.
In addition, on June 5, 2013, the Attorney General petitioned this Court for an opinion as to whether the financial impact statement accompanying this initiative petition complies with section 100.371, Florida Statutes (2012). The financial impact statement, which was prepared by the Financial Impact Estimating Conference, states:
This amendment does not increase or decrease state revenues. The state revenue restricted to the purposes specified in the amendment is estimated to be $648 million in Fiscal Year 2015-16 and grows to $1,268 billion by the twentieth year. Whether this results in any additional state expenditures depends upon future legislative actions and cannot be determined. Similarly, the impact on local government revenues, if any, cannot be determined. No additional local government costs are expected.
No briefs or comments have been submitted in response to the sponsor’s argument that the financial impact statement complies with the statute.
II. ANALYSIS
When this Court renders an advisory opinion concerning a proposed constitutional amendment arising through the citizen initiative process, the Court limits its inquiry to two issues: (1) whether the amendment itself satisfies the single-subject requirement of article XI, section 3, Florida Constitution; and (2) whether the ballot title and summary satisfy the clarity requirements of section 101.161, Florida Statutes. Advisory Op. to the Att’y Gen. re Protect People, Especially Youth, from Addiction, Disease & Other Health Hazards of Using Tobacco, 926 So.2d 1186, 1190 (Fla.2006). This Court reviews the corresponding financial impact statement for compliance with section 100.371, Florida Statutes. Id. at 1194.
A. Single-Subject Requirement
Article XI, section 3, Florida Constitution, sets forth the single-subject requirement for a proposed constitutional amendment arising through the citizen initiative process. The single-subject rule is intended to prevent an amendment from engaging in either of two practices: (a) logrolling; or (b) substantially altering or performing the functions of multiple *51 branches of state government. “A proposed amendment meets this test when it ‘may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test.’ ” Advisory Op. to the Att’y Gen. re Fairness Initiative Requiring Legislative Determination that Sales Tax Exemptions & Exclusions Serve a Public Purpose (Fairness Initiative), 880 So.2d 630, 634 (Fla.2004) (quoting Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984)).
We conclude that the proposed amendment in this case properly “embrace[s] but one subject.” Art. XI, § 3, Fla. Const. The proposed amendment will have only one effect: it will constitutionally establish the proportion of an existing revenue stream that is to be dedicated to an existing trust fund. Because the amendment would make a single change — establishing the percentage of documentary tax revenue credited to the Land Acquisition Trust Fund — and does not contain any unrelated provisions, the amendment does not engage in logrolling.
The amendment also satisfies the prohibition against substantially altering or performing the functions of multiple branches of state government. The proposed amendment does not seek to create a new tax or alter the purpose or management of the Land Acquisition Trust Fund. Because it impacts only the legislative function of determining the amount of tax revenue that is credited to the trust fund, the proposed amendment is similar to the amendment approved in Advisory Opinion to the Attorney General re Funding for Criminal Justice (Criminal Justice), 639 So.2d 972, 973-74 (Fla.1994), which sought to create a trust funded by sales taxes and is even narrower in scope than the amendment approved in Advisory Opinion to the Attorney General — Fee on the Everglades Sugar Production (Everglades Sugar Production), 681 So.2d 1124, 1127-28 (Fla.1996), which proposed to levy a new fee and to direct the use of that new state revenue. As in Criminal Justice and Everglades Sugar Production, the instant amendment addresses “a specific tax designed to produce revenue for which the amendment would allocate uses” and therefore satisfies the single-subject rule. Advisory Op. to the Att’y Gen. re Requirement for Adequate Pub. Educ. Funding, 703 So.2d 446, 450 (Fla.1997).
B. Ballot Title and Summary
Section 101.161(1), Florida Statutes (2012), sets forth the requirements for the ballot title and summary of a proposed constitutional amendment:
The ballot summary of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.... The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
When reviewing the validity of a ballot title and summary under section 101.161(1), the Court asks two questions:
First, the Court asks whether “the ballot title and summary ... fairly inform the voter of the chief purpose of the amendment.” Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So.2d [491, 497 (Fla.2002) ]. Second, the Court asks “whether the language of the title and summary, as written, misleads the public.” Advisory Op. to Att’y Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla.1998).
Fairness Initiative, 880 So.2d at 635-36. “[I]t is not necessary to explain every ramification of a proposed amendment, only the chief purpose.” Advisory Op. to the Att’y Gen. re Additional Homestead Tax *52 Exemption, 880 So.2d 646, 651 (Fla.2004) (quoting Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla.1986)).
In this case, the ballot title and summary comply with the respective word limitations and fairly inform the voters of the chief purpose of the proposed amendment. Both the title and summary state that the proposed amendment will dedicate documentary tax revenue to the Land Acquisition Trust Fund. The title includes the language “Dedicates Funds to Acquire and Restore Florida Conservation and Recreation Lands,” and the summary begins with the clause “Funds the Land Acquisition Trust Fund,” describes the uses of the Fund, and explains that the funds will be obtained “by dedicating 33 percent of net revenues from the existing excise tax on documents for 20 years.” The title and summary are straightforward and accurate.
C. Financial Impact Statement
Article XI, section 5(c), Florida Constitution, directs that “[t]he legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by initiative pursuant to section 3.” Section 100.371(5)(a), Florida Statutes (2012), requires that this financial impact statement address the estimated increase or decrease in any revenues or costs to the state or local governments resulting from the proposed initiative, and section 100.371(5)(c)2 requires that the statement be clear and unambiguous and consist of no more than seventy-five words.
This Court’s review of financial impact statements is narrow. The Court has “limited itself only to address whether the statement is clear, unambiguous, consists of no more than seventy-five words, and is limited to address the estimated increase or decrease in any revenues or costs to the state or local governments.” Advisory Op. to the Att’y Gen. re Referenda Required for Adoption & Amend. of Local Gov’t Comprehensive Land Use Plans, 963 So.2d 210, 214 (Fla.2007). The instant financial impact statement satisfies these requirements.
The financial impact statement is exactly seventy-five words and limited to the subject of the estimated increase or decrease in revenues or costs to the state or local governments. It plainly states that the proposed amendment will not increase or decrease state revenues and estimates the amount of documentary tax revenues that will be dedicated to the Land Acquisition Trust Fund as a result of the proposed amendment. As for costs, the financial impact statement explains — again in plain language — that the Financial Estimating Conference cannot predict how the Legislature will choose to spend or save the documentary tax revenue allocated to the Land Acquisition Trust Fund. See Advisory Op. to the Att’y Gen. re Fla. Growth Mgmt. Initiative Giving Citizens the Right to Decide Local Growth Mgmt. Plan Changes, 2 So.3d 118, 124 (Fla.2008) (“Overall, the financial impact statement is necessarily indefinite but not unclear or ambiguous.”). Accordingly, the financial impact statement complies with section 100.371(5), Florida Statutes (2012).
III. CONCLUSION
The initiative petition and proposed title and summary meet the legal requirements of article XI, section 3, Florida Constitution, and section 101.161(1), Florida Statutes (2012). In addition, the financial impact statement is in accordance with section 100.371(5), Florida Statutes (2012). We therefore approve the pro *53 posed amendment and financial impact statement for placement on the ballot.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.