# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

———————————————

No. 1D18-3141

———————————————

JOSE OLIVA, in his official capacity as Speaker of the Florida House of Representatives; BILL GALVANO, in his official capacity as President of the Florida Senate; the FLORIDA LEGISLATURE; the DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES; the COMMISSIONER OF AGRICULTURE; the DEPARTMENT OF ENVIRONMENTAL PROTECTION; the SECRETARY OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION; the FISH AND WILDLIFE CONSERVATION COMMISSION; the EXECUTIVE DIRECTOR OF THE FISH AND WILDLIFE CONSERVATION COMMISSION; the DEPARTMENT OF STATE; and the SECRETARY OF STATE,

    Appellants,

    v.

FLORIDA WILDLIFE FEDERATION, INC., FLORIDA DEFENDERS OF THE ENVIRONMENT, INC., ET AL.,

    Appellees.

———————————————

On appeal from the Circuit Court for Leon County.
Charles W. Dodson, Judge.

September 9, 2019

BILBREY, J.

In 2014, the voters of Florida overwhelmingly approved a ballot measure to amend the Florida Constitution. That ballot measure became section 28 of Article X of the Florida Constitution. Since then, two separate suits were filed by various plaintiffs against various state actors alleging that certain appropriations were contrary to section 28; those suits were consolidated. A final summary judgment was thereafter entered holding that the legislature had not complied with section 28 and that judgment is now before us. As explained below, we reverse the summary judgment and remand for further proceedings.

## BACKGROUND

In 2014, the voters of Florida approved adding Article X, section 28 to the Florida Constitution. It provides:

**SECTION 28. Land Acquisition Trust Fund. -**

(a) Effective on July l of the year following passage of this amendment by the voters, and for a period of 20 years after that effective date, the Land Acquisition Trust Fund shall receive no less than 33 percent of net revenues derived from the existing excise tax on documents, as defined in the statutes in effect on January l, 2012, as amended from time to time, or any successor or replacement tax, after the Department of Revenue first deducts a service charge to pay the costs of the collection and enforcement of the excise tax on documents.

(b) Funds in the Land Acquisition Trust Fund shall be expended only for the following purposes:

2

(1) As provided by law, to finance or refinance: the acquisition and improvement of land, water areas, and related property interests, including conservation easements, and resources for conservation lands including wetlands, forests, and fish and wildlife habitat; wildlife management areas; lands that protect water resources and drinking water sources, including lands protecting the water quality and quantity of rivers, lakes, streams, springsheds, and lands providing recharge for groundwater and aquifer systems; lands in the Everglades Agricultural Area and the Everglades Protection Area, as defined in Article II, Section 7(b); beaches and shores; outdoor recreation lands, including recreational trails, parks, and urban open space; rural landscapes; working farms and ranches; historic or geologic sites; together with management, restoration of natural systems, and the enhancement of public access or recreational enjoyment of conservation lands.

(2) To pay the debt service on bonds issued pursuant to Article VII, Section 11(e).

(c) The moneys deposited into the Land Acquisition Trust Fund, as defined by the statutes in effect on January 1, 2012, shall not be or become commingled with the general revenue fund of the state.

In 2015, a complaint for declaratory and supplemental relief was filed by the Florida Wildlife Federation (FWF) and several other plaintiffs.[1]  The named defendants were Andy Gardiner,

---

[1] The other plaintiffs in that action were St. Johns Riverkeeper, Inc., the Environmental Confederation of Southwest Florida, and Manley Fuller, a Florida taxpayer, a resident of Wakulla County, and president of the FWF.  The Sierra Club, Inc., was later added as a plaintiff in the first amended complaint.  For

then President of the Florida Senate, and Steve Crisafulli, then Speaker of the Florida House, and the Florida Legislature. Jeff Atwater, then Chief Financial Officer of the State of Florida, was later added as a defendant. The gravamen of the complaint was that certain appropriations which utilized revenue from the Land Acquisition Trust Fund (LATF) were not permissible under that provision and hence were unconstitutional. After several amendments to the complaint, FWF moved for summary judgment.

In a separate proceeding, the Florida Defenders of the Environment, Inc., and other individual plaintiffs[2] (collectively "FDE") filed suit against the Florida Secretary of State, the Florida Secretary of Agriculture, the Director of the Florida Fish and Wildlife Commission, and the Secretary of the Florida Department of Environmental Protection. By that complaint, later amended, FDE sought a declaration that certain expenditures made by the defendant agencies were violative of LATF. FDE also moved for summary judgment.

The separate proceedings were consolidated. Certain affidavits and other matters were attached to the various pleadings filed by plaintiffs and defendants. A hearing was then held on the pending motions for summary judgment. After receipt of extensive argument, the trial court granted FDE's summary judgment motion with the following oral ruling:

> All counsel have done a very, very good job of putting forth their respective positions in the case, and we're obviously dealing with a very important issue of the Constitution and this citizen initiative that, according to what I've read in the file and what I recall, was passed by a very large majority of the voters.

purposes of brevity, all of the plaintiffs in that action will be referenced by the single designation FWF.

[2] The individual plaintiffs were Stephen J. Robitaille, Joseph W. Little, James P Clugston, Lola Haskins, Stephen M. Holland, and W. Thomas Hawkins.

I read the amendment in the manner interpreted by Mr. Little, and that is, when you read Article X, Section 28, subsection 1 -- and maybe it could have been drafted differently. I would imagine that a lot of thought and work went into drafting that amendment. But I read it as saying, okay, the Land Acquisition Trust Fund is going to get the tax money that is talked about in the beginning of the statute, and I think that goes on for 20 years.

And I read that -- when I read it in its entirety, and I've read it now well over a hundred times, I come to the conclusion that it clearly refers to conservation lands purchased after the effective date of the amendment. And in doing that I looked back over what the Florida Supreme Court said in 2013, when it unanimously approved the amendment and the title and the ballot summary and posed the question, for example, of does that ballot title and summary fairly inform the voter of the chief purpose of the amendment, whether the language of the title and summary misleads the public, and all that goes with that, I have to conclude that the statute is meant to say everything that goes in that fund can only be used for conservation lands purchased after the date that it goes into effect.

As for its pending, more limited motion for summary judgment, FWF announced to the court it had nothing to argue given the trial court's ruling on FDE's motion. A written final order was thereafter entered.

In its judgment on the consolidated case, the trial court found that the "plain meaning" of section 28 is that "funds in the Land Acquisition Trust Fund can be expended only for the (1) acquisition of conservation lands, and (2) the improvement, management, restoration and enhancement of public access and enjoyment of those conservation lands purchased **after the effective date of the amendment**" in 2015. (Emphasis added).

In so finding, the trial court noted that the title of the amendment ("Land Acquisition Trust Fund") is "an important part of what makes the language [of section 28] so unambiguous." The

5

purpose of section 28 is for the acquisition of land, per the title, the trial court reasoned.

The trial court further explained its reasoning by noting that a long list is given in subsection (b) of types of conservations lands which may be acquired by LATF expenditures. At the end of the long list of types of conservation lands is the phrase "together with management, restoration of natural systems, and the enhancement of public access or recreational enjoyment of conservation lands." The phrase "together with" is an important one, as the trial court explained:

> The connecting words "together with" does more than add one group to the list - it also attaches it to the clauses preceding it. After conservation lands are first acquired, they then may be managed or restored so that public enjoyment of them is enhanced. This is the plain meaning of the text, and it is the only reading of that subsection that gives effect to all the words, the grammar and punctuation.

Besides the title of the provision and the plain meaning of the words of the provision, the trial court considered the ballot title and summary put before the voters. That ballot title was: "Water and Land Conservation – Dedicates Funds to Acquire and Restore Florida Conservation and Recreation Lands."

As for the ballot summary, it provided: "Funds the Land Acquisition Trust Fund to acquire, restore, improve, and manage conservation lands." The trial court observed that the summary then listed those conservation lands that "can be acquired and then restored, improved, and managed." The Florida Supreme Court, in its review of the ballot initiative, held the title and summary were "straightforward and accurate." *Advisory Op. to Att'y Gen. re Water & Land Conservation – Dedicates Funds to Acquire and Restore Fla. Conservation and Recreation Lands*, 123 So. 3d 47, 52 (Fla. 2013).

The trial court reviewed the history of the LATF, which was originally added to the Florida statutes as part of the Outdoor Recreation and Conservation Act of 1963. Ch. 63-36, § 1, *Laws of Fla.* The LATF was then made a part of the 1885 Florida

6

Constitution by amendment in 1965. *See* Art. IX, § 17, Fla. Const. (1965). That amendment, however, was by its own terms to last only 50 years. The 2014 amendment, which became Article X, section 28 of the Florida Constitution, was intended to replace the expired version.

The trial court noted that the Legislature and State agencies commingled LATF funds with other appropriations despite the lack of constitutional authorization for such co-mingling. In fact, subsection (c) of Article X, section 28 specifically forbids co-mingling of LATF revenue with general revenue. The trial court found that the Legislature and other defendants admitted that "no existing programs could have been shifted from other funding sources to the Land Acquisition Trust Fund."

Given all the above, the trial court concluded that the "clear intent was to create a trust fund to purchase new conservation lands and take care of them. The conservation lands the State already owned were to be taken care of, certainly, but from non-trust money." Thus, the trial court held that Article X, section 28:

> 1. creates a fund for the acquisition of conservation lands and property interests the State did not own prior to the effective date of the amendment and for the improvement, management, restoration, and enhancement of those newly acquired lands;

> 2. forbids LATF revenue to be used on land acquired before the effective date of the amendment;

> 3. prohibits commingling of LATF revenue with general revenue.

The trial court held further that agencies must track expenditures from the LATF to ensure LATF compliance. Finally, the trial court declared some 100 appropriations unconstitutional.

Following entry of this final summary judgment, the defendants moved for rehearing. A motion to disqualify the trial

judge was also filed by the legislative defendants. All of these motions were denied. Appellants then brought this appeal.[3]

## ANALYSIS

A final summary judgment is reviewed de novo. *Treasure Coast Marina, LC v. City of Fort Pierce*, 219 So. 3d 793 (Fla. 2017); *Volusia Cty. v. Aberdeen at Ormond Beach, L.P.,* 760 So. 2d 126 (Fla. 2000). A question of constitutional law is also reviewed de novo. *Treasure Coast; Lewis v. Leon Cty.*, 73 So. 3d 151 (Fla. 2011). A court's task in "constitutional interpretation follows principles parallel to those of statutory interpretation." *Zingale v. Powell*, 885 So. 2d 277, 282 (Fla. 2004); *Coastal Fla. Police Benev. Ass'n, Inc. v. Williams*, 838 So. 2d 543, 548 (Fla. 2003) ("The rules which govern the construction of statutes are generally applicable to the construction of constitutional provisions."). Therefore, a reviewing court's analysis begins with the plain text of the constitution. *See Benjamin v. Tandem Healthcare, Inc.*, 998 So. 2d 566 (Fla. 2008); *Florida Soc'y of Ophthalmology v. Fla. Optometric Ass'n*, 489 So. 2d 1118 (Fla. 1986). "The words of the constitution 'are to be interpreted in their most usual and obvious meaning, unless the text suggests that they have been used in a technical sense.'" *Lewis*, 73 So. 3d at 153 (quoting *Wilson v. Crews*, 34 So. 2d 114,

---

[3] Fifteen amici appeared in this appeal, with three separate friend of the court briefs in support of the Appellants, four briefs in support of FWF and FDE, and one brief from, among others, the successor to the entity which initially sponsored the amendment not explicitly supporting either side. The amici in support of Appellants, in general, expressed concern that if the final judgment were not reversed, millions of dollars in current appropriations (and potentially billions of dollars in future appropriations) for restoration of the Everglades, beaches, springs, lakes, rivers, and estuaries would be at risk since most of those resources are already owned by the State. The amici in support of FWF and FDE, in general, countered that the LATF should only be used for acquiring and maintaining new lands not already owned by the State and that funds from general revenue should be appropriated for the maintenance or improvement of existing environmental projects. We appreciate the input of all amici.

118 (Fla. 1948)).  If the language of a constitutional provision "is clear, unambiguous, and addresses the matter in issue, then it must be enforced as written." *Florida Soc'y of Ophthalmology,* 489 So. 2d at 1119 (Fla.1986).

A reviewing court should also construe the text in a manner consistent with the intent of the framers and voters.  *See Caribbean Conservation Corp., Inc. v. Fla. Fish & Wildlife Conservation Comm'n*, 838 So. 2d 492  (Fla. 2003).  Voter intent is discerned through the plain meaning of the text.  "We are obligated to give effect to [the] language [of a Constitutional amendment] according to its meaning and what the people must have understood it to mean when they approved it."  *City of St. Petersburg v. Briley, Wild & Assocs., Inc.*, 239 So. 2d 817, 822 (Fla.1970); *see Benjamin*, 998 So. 2d at 570.

While the trial court purported to construe the plain meaning of the constitutional text, that provision does not plainly restrict the use of LATF revenue to improvement, management, restoration, or enhancement of lands only acquired after 2015.  Subsection (b) of the amendment subsection authorizes LATF revenue to be used to finance the acquisition of land, water areas, easements, and the like.   The subsection also authorizes refinancing.   That the text specifically authorizes refinancing suggests that property for which the State already owns title is within the purview of permissible LATF activities.

The subsection further authorizes LATF revenue to finance the improvement of land, water areas, easements, and the like.  There is no explicit limitation in the text that restoration activities must be on State owned lands.   Indeed, the text indicates that restoration can occur on "working farms and ranches," which presumably would not be owned by the State.

Further still, the text does not plainly limit the improvement of property to those properties only recently acquired.  Instead, the plain words of the subsection, as well as the placement of the only colon in subsection (b), indicate that acquisition and improvement are separate but coequal activities for LATF revenue.

As for the phrase "together with management, restoration of natural systems, and the enhancement of public access or

9

recreational enjoyment of conservation lands" at the end of the subsection, it would be grammatically incorrect to assume, as the trial court did, that this phrase modifies all which comes before it in subsection (b). As noted in the friend of the court brief of Florida Conservation Voters, Inc., the successor to the sponsor of the citizen's initiative that became Article X, section 28, the phrase "together with" generally means "in addition to" or "in association with." *See Merriam-Webster's Dictionary* https://www.merriam-webster.com/dictionary/together%20with (last visited Aug. 6, 2019). The plain words "management," "restoration," and "enhancement" authorize expenditure of LATF funds on activities not expressly concerned with acquisition or improvement per se. Thus, management of an existing natural resource, which is already owned by the State and which is not in immediate need of improvement, is apparently authorized by subsection (b).

It should be noted that when the Florida Supreme Court considered the ballot initiative, it did not determine how LATF revenue could be spent. Instead, its inquiry was three-fold. First, it considered whether the proposed amendment satisfied the single-subject requirement of Article XI, section 3 of the Florida constitution and found it did. *Advisory Op. to Att'y Gen. re Water & Land Conservation,* 123 So. 3d at 51.

Second, the Supreme Court considered whether the financial impact statement prepared for the ballot measure was clear, unambiguous, no more than seventy-five words, and addressed only estimated increases or decreases in revenues or costs to state and local governments. *Id.* at 52. The Supreme Court found that the financial impact statement satisfied these requirements. *Id.*

Third, and importantly for our purposes, the Supreme Court considered, as required by section 101.161(1), Florida Statutes (2012), whether the ballot title and summary fairly informed the voters of the chief purpose of the amendment and was not misleading. The Supreme Court observed that both

> the title and summary state that the prosed amendment will dedicate documentary tax revenue to the Land Acquisition Trust Fund. The title includes the language "Dedicates Funds to Acquire and Restore Florida Conservation and Recreation Lands," and the summary

10

begins with the clause "Funds the Land Acquisition Trust Fund," describes the uses of the Fund, and explains that the funds will be obtained "by dedicating 33 percent of net revenues from the existing excise tax on documents for 20 years." The title and summary are straightforward and accurate.

*Advisory Op. to Att'y Gen. re Water & Land Conservation,* 123 So. 3d at 52. There was no comment by the Supreme Court as to whether revenue from the LATF could only be spent on acquisition and then maintenance of new resources. As discussed above, we hold that the trial court so ruling was error.

Because we must overturn the trial court's unsupportable reading of Article X, section 28, the trial court's declaration that multiple appropriations are unconstitutional must necessarily be overturned as well as the declaration was premised on the trial court's view of the amendment. Also, the trial court's order that agencies must provide an accounting of its use of LATF revenue is reversed as well as such an order was premised on an erroneous reading of the amendment.

Finally, we find no error in the trial court's denial of the Appellants' motions to disqualify and affirm as to that issue. The grounds raised in the motion for disqualification pertain to the scope and nature of the adverse ruling on FDE's motion for summary judgment. An adverse ruling is not a legally sufficient ground for disqualification. *See Thompson v. State*, 759 So. 2d 650 (Fla. 2000).

By our ruling we do not speak to the legality of the appropriations since enactment of Article X, section 28, a question which remains pending. We hold only that LATF revenue is not restricted to use on land purchased by the State after 2015. Accordingly, the final summary is reversed, and the cause is remanded to the circuit court for further proceedings.

AFFIRMED in part, REVERSED in part, and REMANDED.

LEWIS and MAKAR, JJ., concur.

11

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Andy Bardos and James Timothy Moore, Jr., of GrayRobinson, P.A., George N. Meros, Jr., of Holland & Knight LLP, Jeremiah Hawkes, General Counsel, and Ashley Istler, Deputy General Counsel, The Florida Senate, and Adam S. Tanenbaum, General Counsel, The Florida House of Representatives, Tallahassee, for Appellants The Legislative Parties.

Justin G. Wolfe, General Counsel, Jeffrey Brown and Kelley Corbari, Office of General Counsel, State of Florida Department of Environmental Protection and Fish and Wildlife Conservation Commission, Joan T. Matthews, Office of General Counsel, Department of Agriculture and Consumer Services, and Bradley R. McVay, Interim General Counsel, and Ashley E. Davis, Deputy General Counsel, Department of State, Tallahassee, for Appellants the Florida Department of Environmental Protection, the Department of Agriculture and Consumer Services, the Fish and Wildlife Commission, and the Department of State.

Nicholas A. Primrose and James William Uthmeier, Office of Governor Ron DeSantis, Tallahassee, for Appellants State of Florida, Department of Environmental Protection and the State of Florida, Department of State.

Alisa Coe and Bradley Marshall, Earthjustice, David Guest, and Robert T. Benton, II, Tallahassee; Kenneth B. Wright, Jacksonville, for Appellees Florida Wildlife Federation, et al.

Joseph W. Little, Gainesville, for Appellees Florida Defenders of the Environment, Inc., et al.

Mohammad O. Jazil and Adam F. Blalock of Hopping Green & Sams, P.A., Tallahassee, for *Amici Curiae* the Florida League of Cities, the Florida Water Environment Association Utility Council,

the Florida Rural Water Association, and the Florida Stormwater Association.

James W. Sherman, West Palm Beach, for *Amicus Curiae* South Florida Water Management District.

Hala Sandridge of Buchanan Ingersoll & Rooney PC, Tampa, for *Amicus Curiae* Florida Shore & Beach Preservation Association.

Jon L. Mills of Boies Schiller Flexner LLP, Miami, and Clay Henderson, DeLand, for *Amicus Curiae* Florida Conservation Voters, Inc., The Trust for Public Land, The Everglades Foundation, Inc., and Florida Audubon Society, Inc.

John R. Thomas, St. Petersburg, for *Amicus Curiae* Florida Springs Council, Inc.

Paul J. Schwiep of Coffey Burlington, P.L., Miami, for *Amicus Curiae* Friends of the Everglades, Inc.